Joseph F. iG-agliabdi, J.
In a special proceeding to set aside a Sheriff’s sale, defendants move for reargument. The motion-for reargument presents' an important and novel question in this State: Whether a judgment debtor, whose real property is executed upon and sold at a Sheriff’s sale, can obtain a credit against the judgment being enforced in an amount determined to he the fair market value of the property. The motion for “ reargument” is granted and disposed of in accordance with the following opinion.
On April 25, 1972 plaintiffs obtained a money judgment in the sum of $97,811.30 in the Federal District Court, Southern District of New York, against defendants and others, for violation of the Federal securities laws. The judgment was affirmed by the Second Circuit Court of Appeals and certiorari denied by the United States Supreme Court. A transcript of the judgment was docketed in the Westchester County Clerk’s office on August 14, 1972 and execution issued thereon eight days later. The real property levied upon represents defendants’ residence and consists of a home located on one acre in New Rochelle. Two mortgages exist as senior liens on the property and amount to $28,252.78.
By decision dated October 6, 1972 another Justice of this court denied defendants’ motion for a stay of the Sheriff’s sale which was originally scheduled to he held on November 30, 1972. Thereafter, the Sheriff’s office ascertained that a mortgagee had not been notified of1 the impending sale, and rescheduled the auction for January 15, 1973. At defendants’ request a further adjournment.was granted and the sale was ultimately held on April 16, 1973. On the following day defendants commenced a special proceeding by order to show cause to set aside the Sheriff’s sale. The order stayed plaintiffs from further enforcement of their judgment against the property in question pending a determination in the special proceeding.
On the return day of their motion in the special proceeding, defendants requested vacatur of the sale on the ground of “ newly discovered evidence ”. It was conceded that plaintiffs’ counsel was the only bidder at the sale and that he purchased the property for the magnificent sum of $500. Title is being held in escrow for plaintiffs pursuant to an arrangement with their attorney. Defendants submitted an appraisal which showed that as of April 21, 1972 the real property had a market value of $73,000. Defendants further contended that as of April, 1973 the value had increased by an additional $7,000. Plaintiffs averred that they had an appraisal in their posses *34 sion (not exhibited to the court) which valued the property as of the date of sale at $55,000. Thus, using the lower figure supplied by plaintiffs, it is undisputed that they have obtained approximately $27,000 equity for the paltry sum of $500.
However, on the original motion defendants merely noted these figures and characterized the results as unfair. Defendants sought vacatur of the sale solely on the ground that the selling procedure had been defective. By decision dated May 2, 1973 the court rejected defendants’ argument and held that the Deputy Sheriff fully complied with the appropriate statutory provisions. On the within application, defendants concede the correctness of the original decision. Nevertheless, defendants purportedly move for reargument and contend for the first time that they are entitled to a credit against the Federal judgment for a sum to be determined which represents the true net fair market value of the property. Alternatively, defendants renew their motion to set aside the sale on the new ground that the amount of the purchase price is grossly inadequate.
Insofar as defendants seek an offset against the debt evidenced by the Federal judgment, this motion is not properly labeled one for reargument. It is, in reality, a motion for a rehearing on additional facts which, in the exercise of discretion, may be entertained by the court (Hinckley v. Paige, 4 A D 2d 949; Gold v. Travelers Ins. Co., 263 App. Div. 817; 2A Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 2221.03; 2 Carmody-Wait 2d, New York Practice, § 8.84). While reargument is not a proper vehicle for seeking new forms of relief (Simpson v. Loehmann, 21 N Y 2d 990) defendants on this motion seek no greater relief than that originally requested. Plaintiffs have addressed themselves to the merits and to avoid unnecessary litigation the court will consider the issues raised (Fox v. Abe Schrader Corp., 36 A D 2d 591).
That portion of the motion to vacate the sale on the ground of the inadequacy of the bid price is denied (State Realty & Mtge. Co. v. Villaume, 121 App. Div. 793; Monthar, Inc. v. Haralambides, 56 Misc 2d 29; 9 Carmody-Wait 2d, New York Practice, § 64:225; 2A Warren’s Weed, N. Y., Real Property, Judicial Sale, § 8.05). Unlike the situation in Community Capital Corp. v. Lee (58 Misc 2d 34), the within sale was conducted in accordance with lawful procedure. That the amount bid in is disproportionate to the supposed true value is not a ground for vacatur but is a factor to be considered in the wise exercise of the count’s equitable jurisdiction .which .shall be discussed infra.
*35 Defendants rely upon CPLR 5240 which has been held applicable in diverse circumstances to protect judgment debtors from the harsh results of lawful enforcement procedures (Cook v. H. R. H. Constr. Corp., 32 A D 2d 806; Seyfarth v. Bi-County Elec. Corp., 73 Misc 2d 363; Hammond v. Econo-Car of North Shore, 71 Misc 2d 546; Lee v. Community Capital Corp., 67 Misc 2d 699; Gilchrist v. Commercial Credit Corp., 66 Misc 2d 791; see Concord Landscapers v. Pincus, 41 A D 2d 759). The cited section provides: : ‘ The court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure. Section 3104 is applicable to procedures under this article. ’ ’
This is a broad provision without prior statutory counterpart. Its major purpose is to prevent abuse in the use of or as a result of the use of the enforcement procedures in CPLR article 52 (Siegel, Supplementary Practice Commentary to CPLR 5236, McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 5236, [1972/73 Supp., pp. 155-156]; 10 Carmody-Wait 2d, New York Practice, § 64:434; 6 Weinstein-Korn-Miller, N. Y. Civ. Prac., pars. 5240.01, 5240.02). The application of CPLR 5240 to a lawfully consummated Sheriff’s sale appears to be without precedent. Furthermore, the prayer for an offset within the context of an execution sale for the difference between the bid price and the fair market value of the property presents a novel question in this jurisdiction.
In a recent article by Professor Stefan A. Risenfeld entitled Enforcement Of Money Judgments In Early American History (71 Mich. L. Rev. 691) the author traces the origins of money judgment enforcement procedure in this country. It is interesting to note that virtually every jurisdiction adopted numerous and different legislation within their own borders regarding execution of money judgments on real property. At diverse times the individual States precluded execution on real property, authorized judgment creditors .to obtain rents, etc., for a term of years without transfer of the fee, permitted execution at public auction only upon bids greater than upset prices, authorized execution only after impartial appraisal, directed satisfaction of the judgment upon transfer of title and permitted the judgment debtor to redeem. The author concludes that none of these methods proved satisfactory and opts for a more flexible system such as exists in certain foreign jurisdictions (71 Mich. L. Rev. 691, 727-728).
*36 In New York the right of redemption has been eliminated upon sales under money judgments, upset prices are not statutorily mandated, impartial appraisals are usually not utilized and the judgment is satisfied only as the amount passing to the judgment creditor-after the sale.
In the absence of CPLR 5240 what would normally occur at bar is that plaintiffs would succeed to defendants’ interest \n the premises and obtain title to property with an admitted pet market value of $27,000 for the meager sum of $500. The latter figure, minus poundage and incidental sale expenses, would be credited against the judgment. Therefore, as was noted at the outset, plaintiffs have obtained at least $26,000 in property without a concomitant adjustment in' the outstanding debt. The result is unconscionable and the court- cannot give sustenance to such an undeserved windfall.
By way of analogy it would be useful to review basic principles applicable to mortgage foreclosure actions and deficiency judgments. The mortgagee has alternative remedies to proceed at law on the bond for the mortgage debt or to proceed in equity on the mortgage in foreclosure (Seaman’s Bank for Sav. v. Smadbeck, 293 N. Y. 91). At common law a deficiency judgment could not be obtained in an action to foreclose the mortgage (Irving Trust Co. v. Seltzer, 265 App. Div. 696). The revised statutes changed common-law" rules and authorized the grant of a deficiency decree in a foreclosure action which precluded the mortgagee from thereafter maintaining an action on the debt (Equitable Life Ins. Soc. of U. S. v. Stevens, 63 N. Y. 341; see Real Property Actions and Proceedings Law, §§ 1301, 1371).
During the great depression public sales of real property were exercises in futility since prospective buyers would not bid anything near predepression market values. Thus, judgment creditors would bid in the property at nominal cost with de minimis adjustment in the debt. This result occurred with great frequency in mortgage foreclosure proceedings. In 1933 emergency legislation was enacted (L. 1933, ch. 794) whereby a new procedure was created for the grant of a deficiency judgment in such proceedings. The purpose of the legislation was to prevent the then existing inequity of “ a double recovery for one debt ” (Weisel v. Hagdahl Realty Co., 241 App. Div. 314, 318; see Heiman v. Bishop, 272 N. Y. 83). The design of the legislation favored mortgagors and mortgagees. It gave to mortgagees the sure knowledge of1 being made whole in one pro *37 ceeding and ended the unfair practice of mortgagors losing their equity of redemption and still being called upon to repay virtually unreduced judgments (15 Carmody-Wait 2d, New York Practice, § 92:403).
The emergency legislation was made permanent in 1938 (L. 1938, ch. 510, § 1) and is now found in section 1371 of the Real Property Actions and Proceedings Law. Subdivision 2 of section 1371 provides that upon a motion for a deficiency judgment the court must determine the fair market value of the property at the time of sale and apply that figure in ascertaining the deficiency. In determining fair market value the bid price may be disregarded where it is below market value (Kirk v. Chalar Realty Corp., 262 App. Div. 1011).
It is interesting to note that at common law in actions to foreclose mechanic’s liens, deficiency judgments paralleled the procedure in mortgage foreclosures (Decker v. O’Brien, 1 App. Div. 81, affd. 159 N. Y. 553; Ringle v. Wallis Iron Works, 86 Hun 153, affd. 155 N. Y. 674). After the emergency legislation of 1933 pertaining to mortgage foreclosures was made permanent public policy, the predecessor of the Lien Law (see §§ 43, 58) was amended to incorporate generally the new deficiency judgment procedure. In Silpin Plumbing Corp. v. A Builders Corp. (190 Misc. 598) then Justice Fboessel was presented with the issue whether the time limitations and mode of proof required in mortgage foreclosure proceedings were applicable to foreclosure of mechanic’s liens. He answered in the affirmative and stated (pp. 599-600): “ There appears to be no good reason why a plaintiff causing real property to be sold to satisfy a mechanic’s lien thereon should be permitted to derive a possibly unconscionable advantage from a sacrifice of such real property at an enforced sale any more than a plaintiff using the same method to secure payment of a mortgage ”.
Consequently, it is readily apparent that in actions to foreclose mortgages or mechanics ’ liens, the, owner of the property is protected against abuse whenever a deficiency is sought because the debt is reduced by the reasonable or fair market value of the property at the time of sale. CPLR 5240 must be read in light of this State’s policy regarding protection to property owners when other liens against real property are enforced. “ That section was clearly intended to empower the courts to prevent unreasonable annoyance and abuse in the use of the provisions of article 52 of the CPLR in enforcing judgments ” (Cook v. H. R. H. Constr. Corp., 32 A D 2d 806, 807, supra). *38 ‘•' While the 5240 remedy must be used sparingly, its purpose is to protect persons from unnecessarily harsh use of legal procedures. Perhaps nowhere is this more pertinent than in the area of unredeemable Sheriff’s sales of residential property.” (Seyfarth v. Bi-County Elec. Corp., 73 Misc 2d 363, 365-366, supra). The cases construing CPLR 5240 have generally held that it provides for discretionary protective power against abusive enforcement procedures lawfully used and authorizes the courts to fashion enforcement remedies to meet the exigencies of the particular case (see, e.g., Hammond v. Econo-Car of North Shore, 71 Misc 2d 546, supra; Gilchrist v. Commercial Credit Corp., 66 Misc 2d 791).
Accordingly, the court is inclined to the view that CPLR 5240 is a viable remedy under the facts extant. It is to be noted that plaintiffs do not contend that, absent ah offset, the result is fair and reasonable; rather, they present technical arguments against the application of CPLR 5240 to this particular case.
Prior to discussing these contentions the court will consider the motion in light of its equitable jurisdiction. It has been held that equity will restrain enforcement of judgments where appropriate (Stilwell v. Carpenter, 59 N. Y. 414; Ladew v. Hart, 8 App. Div. 150, affd. 155 N. Y. 629). Equity will intervene to permit a judgment creditor to set-off a sum owing him against the judgment being enforced where he is otherwise deprived of that right (Littlefield v. Albany County Bank, 97 N. Y. 581). At bar, plaintiffs in effect owe defendants a sum representing fair market value which cannot be recovered by defendants except as an offset. The law does not favor windfalls (Rosenblum v. Harris, Upham & Co., 38 A D 2d 225, 226) and novelty in the case presented is no ground for denying relief (Piper v. Hoard, 107 N. Y. 73, 76). A party with a legal right may not use it where the results are unjust and oppressive (Noyes v. Anderson, 124 N. Y. 175, 179). A court sitting in equity must be responsive to the needs of society (20 N. Y. Jur., Equity, §§ 33, 86, 90, 91) and judicial notice is taken of the present abuses in execution sales of real property (Concord Landscapers v. Pincus, 41 A D 2d 759, supra). As was held by Judge Fboessel in Silpin Plumbing Corp. v. A Builders Corp., (190 Misc. 598, supra), no good reason exists to differentiate between the treatment and procedure accorded liens foreclosed against real property. Consequently, from the foregoing the court holds that as á matter of equity defendants are entitled to the relief sought.
*39 Plaintiffs contend that the court is without jurisdiction to provide an offset against a Federal judgment.* The argument is without merit. The court has inherent power to grant equitable relief against further enforcement of a Federal court judgment in this State (Barry v. Brune, 8 Hun 395, affd. 71 N. Y. 261). The setoff may be effected by way of a separate proceeding for that purpose (Stilwell v. Carpenter, 59 N. Y, 414, 424, supra). Furthermore, subdivision (b) of CPLR 5018 provides that a Federal judgment docketed in the courts of this State shall be treated “asa judgment entered in the supreme court ” of this State. Similarly, subdivision (a) of rule 69 of the Federal Rules of Civil Procedure (U. S. Code, tit. 28, Appendix) provides in essence that execution upon a money judgment rendered by a Federal court shall be subject to the laws of the State in which it is being enforced (7 Moore’s Federal Practice, par. 69.04, subd. [3]). In other words, the Federal judgment is accorded the same benefits and burdens that accrue to a State judgment and both CPLR 5240 and the court’s inherent equitable powers provide for regulation of all judgments being enforced here.
Plaintiffs’ further contention that an offset should not occur because the judgment exceeds the highest appraised value of the property is unpersuasive. It is difficult to understand why other persons did not attend the advertised public sale. Once the sale was consummated, the judgment debtor’s interest therein ceased and the judgment is no longer a lien on the property. Prior liens do exist but the admitted value of the property is approximately two timés the amount of the liens and 54 times the sum bid in.
The inequity herein is obvious. A remedy should exist and I find that both CPLR 5240 and my general powers in equity are sufficient to halt the abuse inherent in the present scheme of enforcement of money judgments on real property. Accordingly, the court holds that where, as here, the purchaser of the property at the Sheriff’s sale is the holder of the judgment being *40 executed upon, the judgment debtors are entitled to a. credit against the judgment for the difference between the sale price and the fair and reasonable market value of the premises (Clarke v. Schumann, 269 N. Y. 60).
The determination of fair market value (see 3 Rash, Real Property Law and Practice, §§ 2567, 2568, 2571) cannot be= decided on conflicting affidavits and is, therefore, respectfully referred to Special Term Part III for a hearing on that question. Defendants shall file a note of issue and pay appropriate court fees.

Rule 60 (subd. [b], pars. [5], [6]) of the Federal Rules of Civil Procedure (U. S. Code, tit. 28, Appendix) authorize the Federal court to relieve a party from a final judgment where “ (5) 6 * * it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation, of the judgment ”. The design of the quoted language is to permit reopening of judgments as a result of supervening events. However, it has been held that paragraph (5) of subdivision (b) is not applicable to ordinary money judgments (Ryan v. United States Lines Co., 303 F. 2d 430; cf. 7 Moore’s Federal Practice, ¶60.26, subd. [4]; Ann. 14 ALR Fed. 309, 331—332 “FRCP: Relief From Final Judgment”) and it is not clear whether the Federal courts would apply rule 60 to the facts at bar.