**Charlotte MIKULEC, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV–80–1105E.**

United States District Court, W. D. New York.

March 5, 1982.

---

John F. Papsidero, Tonawanda, N. Y., for plaintiff.

Roger P. Williams, U. S. Atty., Jack Penca, Asst. U. S. Atty., Buffalo, N. Y., Jonathan B. Forman, Tax Division, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

This is an action to quiet title to a piece of real property or, alternatively, for an order compelling defendant to pay plaintiff $121,008.44 as the value of property taken by defendant, plus interest thereon. Jurisdiction lies under 28 U.S.C. § 2410. Plaintiff has moved and defendant has cross-moved for summary judgment.

The property at issue had originally been owned by plaintiff and members of her family in varying percentages. In 1976 Jarl Extrusions, Inc. ("Jarl") recovered two judgments—the first against plaintiff and her son, Conrad Mikulec, for $3,161.50[1] and the second against Conrad and Power-Pak Products ("Power-Pak") for $121,008.44. These judgments were given in 1978 for execution to the Erie County Sheriff, who seized the interests of plaintiff and her son in the property and noticed the property for sale. Defendant was notified of the impending sale because it held outstanding tax liens against the son's property.

Jarl assigned its interests in the son's property to plaintiff August 21, 1978, reserving its interest and rights in the judgment taken against Power-Pak. At the public auction of the property, plaintiff bought it in for $50. Title was transferred to her by a Sheriff's deed in October 1978.

Defendant exercised its right to redeem the property pursuant to section 7425(d)(1) of the Internal Revenue Code and tendered $50.89 to plaintiff, representing the plaintiff's purchase price plus 6% interest as required by statute.

The facts of this case appear to be settled to the satisfaction of the parties. It remains only to determine whether the amount tendered by defendant was the proper amount due plaintiff upon exercise of defendant's right of redemption.

When the United States exercises its right to redeem real property in order to satisfy tax liens "the amount to be paid * * shall be the sum of—

"(1) the actual amount paid by the purchaser at such sale [to which 26 U.S.C. § 7425(b) applies] (*which, in the case of a purchaser who is the holder of the lien being foreclosed, shall include the amount of the obligation secured by such lien to the extent satisfied by reason of such sale*)." 28 U.S.C. § 2410(d). (Emphasis added.) (Other amounts comprising such amount to be paid include interest and maintenance expenses necessarily incurred, but only the quoted portion is presently at issue in this case.)

Plaintiff argues that she is entitled to $121,008.44 as the holder of the judgment lien against her son's property assigned to her by Jarl. She alleges that her purchase of the property for $50 satisfied completely by operation of law the judgment balance and that defendant must pay her the amount thereof in order to redeem the property. Defendant contends that the proper redemption price is the amount actually paid by plaintiff for the property plus interest and any maintenance fees. Both are incorrect.

---

1. This judgment was later vacated *nunc pro tunc. Jarl Extrusions, Incorporated v. Conrad Mikulec & 1*, No. E–24399 (S.Ct., Erie Co., January 24, 1980).

The Treasury Regulations implementing 28 U.S.C. § 2410(d) treat more fully the question of the extent to which a lien is "satisfied" where the purchaser is the holder of the lien being foreclosed. For our purposes the relevant part reads:

"Where, after the sale, the holder of the lien being foreclosed has the right to the unpaid balance of the amount due him, the amount legally satisfied by reason of the sale does not include the amount of such lien to the extent a deficiency judgment may be obtained therefor." 26 C.F.R. § 301.7425–4(b)(2)(ii).[2]

The availability of a deficiency judgment and the amount thereof are matters of state law. Thus, three hypotheticals regarding the redemption price, set out at 26 C.F.R. § 401.5–1(c)(2), reflect different outcomes depending upon the state law measure of the extent to which a lien obligation is legally satisfied as a result of a foreclosure sale. I recite here only *Example (2)*, which I deem applicable in the present case:

"Assume [that A, a delinquent taxpayer, owns Blackacre located in X State upon which B holds a mortgage. After the mortgage is properly recorded, a notice of tax lien is filed which is applicable to Blackacre. Subsequently, A defaults on the mortgage and B forecloses on the mortgage which has an outstanding obligation in the amount of $100,000. At the foreclosure sale, B bids $50,000 and obtains title to Blackacre as a result of the sale. At the time of the foreclosure sale, Blackacre has a fair market value of $75,-000.] [U]nder the laws of X State, the fair market value of the property foreclosed is the amount of the obligation legally satisfied as a result of the foreclosure sale, and in a case in which the amount of the obligation exceeds the amount of the fair market value of the property, the mortgagee has the right to a judgment for the deficiency computed

as the difference between the obligation and the fair market value of the property. In such a case the district director must * * * pay $75,000 in order to redeem Blackacre, whether or not B seeks a judgment for the deficiency."

It appears that under the law of New York a purchaser at a sheriff's sale who is the holder of the judgment lien being executed is entitled to a deficiency judgment only to the extent that the fair market value of the property executed upon at the time of the sale is exceeded by the obligation of the judgment. Consequently the Treasury Regulations cited above dictate that, in order to redeem the subject property, the United States must pay plaintiff the amount of the fair market value of the property.

Section 1371 of New York's Real Property Actions and Proceedings Law provides that, upon a motion for a deficiency judgment following a mortgage foreclosure, the court must determine the fair market value of the property at the time of sale and apply that figure, rather than a lower sale price, in ascertaining the deficiency. Section 5240 of New York's Civil Practice Law and Rules, relating to the enforcement of money judgments, provides:

"The court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure."

This provision obviously gives New York courts broad power "to prevent unreasonable annoyance and abuse in the use of the provisions of article 52 of the [Civil Practice Law and Rules] in enforcing judgments" (*Cook v. H.R.H. Construction Corporation*, 32 A.D.2d 806, 807, 302 N.Y.S.2d 364, 366 (2d Dept. 1969)). In *Wandschneider v. Bekeny*, 75 Misc.2d 32, 346 N.Y.S.2d 925 (S.Ct.,

2. This paragraph provides further that a lien is legally satisfied if the purchaser-holder has waived the right to a deficiency judgment, by a written and binding waiver effective at the time of the sale. While plaintiff would perhaps be willing now to waive any right to a deficiency

judgment on the lien against her son, it is clear that once the sale is consummated a subsequent waiver cannot affect the price that the United States must pay to redeem. *See, Equity Mortgage Corporation v. Loftus*, 504 F.2d 1071, 1076 (4th Cir. 1974).

West.Co.1973), section 5240 and the court's general powers in equity were held to permit the application of the principles of section 1371 of the Real Property Actions and Proceedings Law to provide defendants with an offset against a federal court judgment. The court found that it would be unconscionable to permit plaintiffs to obtain defendants' property, with a net market value of at least $27,000, for the mere sum of $500, plaintiffs' successful bid at the execution sale, without a corresponding adjustment in the outstanding debt. Accordingly, the court held that the "judgment-debtors are entitled to a credit against the judgment for the difference between the sale price and the fair and reasonable market value of the premises." (346 N.Y.S.2d at 932.)

The reasoning and authorities applied in *Wandschneider* persuade me that the opinion therein, which resolved a question of first impression in New York and one which has apparently not since been reported upon, is a correct exposition of New York law. I do not agree with defendant that *Wandschneider* was undermined by the decision of the New York Court of Appeals in *Guardian Loan Co., Inc. v. Early*, 47 N.Y.2d 515, 419 N.Y.S.2d 56, 392 N.E.2d 1240 (1979), in which *Wandschneider* was cited without disapproval (47 N.Y.2d at 518, 419 N.Y.S.2d at 59, 392 N.E.2d 1240). The *Guardian Loan Co.* case concerned the issue whether execution sales to third parties should be always exposed to "the spectre of judicial invalidation" (47 N.Y.2d at 520, 419 N.Y.S.2d at 60, 392 N.E.2d 1240) where the owner asks that the sale be set aside because the price obtained was not representative. This is a far different question from whether a judgment creditor should be allowed to obtain the judgment debtor's property at an execution sale for a paltry sum and thereafter obtain a deficiency judgment without regard to the value already actually wrested from the debtor's hands, which was the issue decided in *Wandschneider.* Compare *Clarke v. Schumann*, 269 N.Y. 60, 62, 198 N.E. 666 (1935), where in applying the predecessor statute to section 1371 the court remarked:

"This is not a case where a stranger bought in the property [(worth at least $57,000)], so that the purchase price over expenses would go to the plaintiff mortgagee as a payment on the mortgage indebtedness. The plaintiff mortgagee put up his own money and would be merely getting it back. The deficiency, therefore, is the difference between the value of the property received and the mortgagor's indebtedness as found by the referee after consummation of the sale."

Thus in the present case, where plaintiff herself both held the judgment lien and purchased the property executed upon, the law of New York would preclude her from seeking a deficiency award based on the amount she paid at the execution sale. Consequently, under the federal statutes and regulations cited above, the fair market value of the property plus interest and proper expenses is the amount the United States must pay to redeem the property. Defendant's reliance on *Equity Mortgage Corporation v. Loftus*, 504 F.2d 1071 (4th Cir. 1974), is unavailing, because in that case it was undisputed that the applicable state law would have permitted the lienor-purchaser a deficiency judgment based on the purchase price less the expenses of the sale (504 F.2d at 1075). The same may be said of *Fidelity Fed. Sav. & Loan Ass'n v. United States*, 445 F.Supp. 683 (M.D.Tenn. 1978).

Defendant urges that *Wandschneider* was decided upon equitable principles which should be foreclosed to plaintiff, who has "unclean hands" because she purchased the subject property for a low price and then demanded a greater amount when the United States sought to redeem the property. Plaintiff has, however, only done that which she is authorized by the Treasury Regulations to do, although she pressed an interpretation of New York law perhaps more favorable to herself than the true interpretation. Ignoring the other ways in which defendant's argument fails to establish the equitable unclean hands defense, I know of no cases holding that one has unclean hands for merely having put forth

and argued in support of a position excessively favorable to oneself.

Under New York law and the applicable Treasury Regulations, the amount owing to plaintiff if the United States wishes to redeem the subject property is the amount of the judgment lien executed thereon ($121,-008.44), or the fair market value of the property sought to be redeemed at the time of the execution sale, whichever is less, plus any appropriate maintenance expenses and accrued interest as required under 28 U.S.C. § 2410(d) and applicable Treasury Regulations. The original tender of what the United States believed presumably in good faith to be the proper redemption price having been made within the statutory 120 days of the sheriff's sale (26 U.S.C. § 7425(d)(1)), it is hereby ORDERED that the United States, within thirty days of the entry of this Memorandum and Order, initiate measures to determine the redemption price in accordance with this decision. *Cf., First National Bank Trust Co. v. MacGarvie,* 126 A.2d 880, 885, 22 N.J. 539 (1956). There appearing to be no statutory or regulatory procedure prescribed for such measures, defendant shall within such time request that this matter be set for calendar call on the third Monday following defendant's request, at which time the parties will present views as to the fair market value of the subject premises at the time of the sale and as to the need for further evidentiary presentations. The parties are advised that the said thirty-day period shall be considered an extension of the redemption period for all actions relating to the determination of the redemption price under 26 C.F.R. § 301.7425–4. It is further hereby ORDERED that, in default of such initiation by the United States, plaintiff shall thereafter hold whatever title she has to the subject property free of the tax lien which is the subject of this controversy. It is further hereby ORDERED that, in default of such initiation, defendant repay to plaintiff, within forty-five days of the entry of this Memorandum and Order, any amounts levied upon the rents from the subject property. This Order is without prejudice to plaintiff's right to recover said rents and interest thereon if after further proceedings herein it appears that plaintiff is so entitled.

Plaintiff's motion for summary judgment is hereby ORDERED granted to the extent consonant with this opinion, and defendant's cross-motion for summary judgment is hereby ORDERED denied.