Charlotte MIKULEC, Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 499, Docket 82–6192.

United States Court of Appeals,
Second Circuit.

Argued Dec. 1, 1982.

Decided April 5, 1983.

John F. Papsidero, City of Tonawanda,
N.Y., for plaintiff-appellee.

James F. Miller, Attorney, Tax Division,
Dept. of Justice, Washington, D.C. (Roger

P. Williams, U.S. Atty., Buffalo, N.Y., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, William S. Estabrook, Attorneys, Tax Division, Dept. of Justice, Washington, D.C., of counsel), for defendant-appellant.

Before LUMBARD, MANSFIELD and KEARSE, Circuit Judges.

LUMBARD, Circuit Judge:

This appeal requires us to decide the extent to which, under New York law, a judgment creditor's judgment is satisfied if, at an execution sale held upon her lien, she purchases the judgment debtor's property herself. The question arises in connection with an attempt by the United States, as tax lienor, to redeem from a judgment creditor-purchaser a part interest in a factory in Buffalo, New York. In a decision filed on March 8, 1982, Judge Elfvin of the Western District of New York held that under New York law Charlotte Mikulec's purchase, as a judgment creditor, of property belonging to her debtor, her son (Conrad Mikulec), for less than value satisfied her judgment to the extent of the property's fair market value. 533 F.Supp. 1142 (W.D.N.Y.1982). He therefore held that the United States, to redeem the interest in the factory, had to pay Charlotte the interest's fair market value or the amount of her outstanding judgment ($121,008.44), whichever was less. The United States declined to make such payment and on May 25, 1982 the district court entered judgment quieting title in Charlotte. The United States now appeals from that judgment, and contends that Judge Elfvin should have set as the redemption price the $50 Charlotte bid at the execution sale. The government argues that under New York law Charlotte's judgment was satisfied not to the extent of the purchased interest's value, but only by the $50 actually bid. We agree with the government's interpretation of New York law and accordingly, we reverse.

The facts are not disputed. On October 4, 1968 Charlotte Mikulec, her husband, Stanley, and their son, Conrad, acquired a factory in Buffalo, New York. Conrad took a 50 percent interest in the property, and Charlotte and Stanley each took a 25 percent interest. On November 8, 1972 the Mikulecs mortgaged the property to Manufacturers and Traders Trust Co. for $185,-580.

On March 10, 1976 Jarl Extrusions, Inc. obtained a judgment in New York Supreme Court, Erie County, against Power-Pak Products, Inc. and Conrad in the amount of $144,933. On May 24, 1976 Jarl obtained a judgment in the same court against both Charlotte and Conrad in the amount of $3,161.[1] Executions with respect to both judgments were issued to the Erie County Sheriff and on June 2, 1978 he seized Charlotte's and Conrad's interests in the factory. The United States received notice of the pending sheriff's sale because it had filed tax liens against Conrad's interest.[2] On August 21, 1978 Jarl assigned its March 10, 1976 and May 24, 1976 judgments to Charlotte. That same day the sheriff's sale was held, and Charlotte purchased Conrad's interest for $50. A sheriff's deed transferred title to Charlotte in October, 1978. On or about December 19, 1978 the United States attempted to redeem the property under 26 U.S.C. § 7425(d)(1) (1976), by sending Charlotte's attorney a check for $50.98 (representing Charlotte's purchase price plus six percent interest). Charlotte rejected the government's check, and on December 4, 1980 brought suit to quiet title or, alternatively, for an order setting as the redemption price the amount outstanding on the March 10, 1976 judgment against Conrad—$121,008.44.

Section 7425(d)(1) of the Internal Revenue Code, 26 U.S.C. § 7425(d)(1) (1976), authorizes the United States to redeem from the purchaser at an execution sale real property subject to federal tax liens. Section 2410(d) of 28 U.S.C. states that the redemption price shall be:

1. This judgment was later vacated *nunc pro tunc.*

2. The United States filed tax liens totalling $100,363.66 against Conrad and his wife, Carol, between November 19, 1976 and May 31, 1977.

(1) the actual amount paid by the purchaser at such sale (*which, in the case of a purchaser who is the holder of the lien being foreclosed, shall include the amount of the obligation secured by such lien to the extent satisfied by reason of such sale*).

(emphasis supplied). Where, as here, the lien holder purchases the liened property, "the amount legally satisfied by reason of the sale does not include the amount of such lien to the extent a deficiency judgment may be obtained therefor." 26 C.F.R. § 301.7425–4(b)(2)(ii) (1982). The extent to which a deficiency judgment may be obtained is solely a matter of state law. *See* the examples in 26 C.F.R. § 301.7425–4(b)(5); *Equity Mortgage Corp. v. Loftus,* 504 F.2d 1071, 1075–76 (4th Cir.1974). Thus the only issue presented by this case is the extent to which Charlotte's purchase of her debtor's property at an execution sale satisfied her judgment under New York law.

In ruling that Charlotte's purchase of Conrad's property satisfied her judgment by the lesser of the property's value and the amount of the judgment, the district court relied upon the decision of the New York Supreme Court, Westchester County, in *Wandschneider v. Bekeny,* 75 Misc.2d 32, 346 N.Y.S.2d 925 (1973). In *Wandschneider,* judgment creditors purchased their judgment debtor's house, in which the debtor had equity of at least $27,000, at a sheriff's sale for $500. On the day following the sale the judgment debtor commenced a special proceeding in Supreme Court to set the sale aside. Finding that it would be unconscionable to permit the judgment creditors to acquire equity of $27,000 in exchange for a $500 reduction in their outstanding judgment, Justice Gagliardi held that CPLR § 5240, together with his general equity powers, authorized him to adjust the parties' rights. Section 5240 provides:

> The court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure. Section 3104 is applicable to procedures under this article.

To prevent the judgment creditors from reaping a windfall, Justice Gagliardi offset against the creditors' outstanding judgment the amount of equity they acquired through the purchase. The Justice supported his ruling by drawing an analogy to Real Property Actions and Proceedings Law § 1371(2), which limits a foreclosing mortgagee's right to a deficiency judgment to the difference between the debt and the greater of the property's fair market value and the bid price.

If *Wandschneider* established the rule of New York law applicable to this case, we would agree with the district court's ruling. We conclude, however, that for two reasons the district court's reliance upon *Wandschneider* was misplaced. First, the New York Court of Appeals has held that § 5240 may not be used to adjust parties' rights after a sale has been validly completed and title transferred. *Guardian Loan Co. v. Early,* 47 N.Y.2d 515, 419 N.Y. S.2d 56, 392 N.E.2d 1240 (1979). Second, we do not think that New York law entitles a judgment debtor to a setoff even though the debtor himself never requests relief.

In *Guardian Loan,* after the defendants failed to pay a judgment for $1,268, their residence was sold at a sheriff's sale to a stranger to the underlying judgment for $3,020. Two days after the sale the sheriff delivered a deed to the purchaser. The defendants thereafter commenced a special proceeding to set aside the sale. They contended that they had equity in their residence of at least $39,000. The Suffolk County Supreme Court, relying upon § 5240, set the sale aside, and a divided Appellate Division affirmed. The Court of Appeals reversed, holding that although § 5240 grants courts broad discretionary powers to alter the *use* of enforcement procedures, "it has no application after a Sheriff's sale has been carried out and the deed delivered to the purchaser, at which time the use of the enforcement procedure will have been completed." 47 N.Y.2d at 520, 419 N.Y.S.2d at 59, 392 N.E.2d at 1242

(citations omitted). The Court of Appeals stated that the use of § 5240 to invalidate titles acquired at judicial sales would discourage third parties from participating in such sales. The court found no evidence that the Legislature intended § 5240 to have such consequences.

The district court distinguished *Guardian Loan* from *Wandschneider* by noting that in *Guardian Loan* the sale was to a stranger to the judgment but in *Wandschneider* it was to the judgment creditor. The court stated that the specific issue addressed in *Guardian Loan*—whether § 5240 authorizes a court to set aside a judicial sale to a third party simply because a representative price was not obtained—was "a far different question from whether a judgment creditor should be allowed to obtain the judgment debtor's property at an execution sale for a paltry sum and thereafter obtain a deficiency judgment without regard to the value actually wrested from the debtor's hands, which was the issue decided in *Wandschneider*." We do not agree with the district judge's attempt to distinguish *Wandschneider* from *Guardian Loan* with regard to § 5240. *Guardian Loan* plainly holds that § 5240 has *no* application after title is transferred pursuant to a judicial sale. *See* 47 N.Y.2d at 520, 419 N.Y.S.2d at 60, 392 N.E.2d at 1243: "However unfortunate the judgment debtor's plight may be, CPLR 5240 relates to the use of an enforcement device; it has no application after the threatened use of an enforcement procedure is a *fait accompli.*" We conclude, therefore, that under *Guardian Loan* § 5240 cannot be used to invalidate sales or to adjust rights following a transfer of title regardless of the identity of the purchaser. As title to Conrad's interest in the factory was transferred to Charlotte long before this case commenced, § 5240 provides no basis for a setoff against Charlotte's judgment.[3]

In holding that § 5240 is irrelevant to this case, we do not mean to suggest that *Guardian Loan* disapproved the *result* in *Wandschneider.* The injustice of permitting a judgment creditor to reap a double or multiple recovery from his debtor is obvious. *Guardian Loan* expressly stated that although § 5240 affords no basis for post-transfer relief, a New York court may always "exercise its *inherent equitable power* over a sale made pursuant to its judgment or decree to ensure that it is not made the instrument of injustice." 47 N.Y.2d at 520, 419 N.Y.S.2d at 60, 392 N.E.2d at 1243 (emphasis supplied, citation omitted). The court stated that "(w)here the judgment debtor can show not merely disparity in price, but in addition ... exploitive overreaching, a court of equity may grant relief." 47 N.Y.2d at 521, 419 N.Y.S.2d at 60, 392 N.E.2d at 1243 (citation omitted). In light of these comments in *Guardian Loan,* we agree with the suggestion in *Survey of New York Practice,* 54 St. John's L.Rev. 382, 420 n. 176 (1980) "that if the facts in *Wandschneider* were before the Court of Appeals today, the use of equity, but not CPLR 5240, would be consistent with the *Guardian Loan* decision."

We believe that on the facts of *this* case, a New York court would not have used its equity powers to impose a setoff. New York courts follow the rules that "equity aids the vigilant," *see, e.g., Valentine Gardens Coop., Inc. v. Oberman,* 237 N.Y. S.2d 535, 538 (Sup.Ct.1963), and that "(e)quity requires that he who would invoke its aid must himself be diligent." *In re Ageloff's Estate,* 161 Misc. 388, 390, 292 N.Y.S. 287, 289 (Surrogate's Ct.1936). Although these maxims generally are applied in connection with claims of equitable es-

3. In *Hoffman v. Seniuk,* 88 A.D.2d 954, 451 N.Y.S.2d 191 (A.D.2d 1982), the Appellate Division held that *Guardian Loan* does not prohibit a court from granting relief under § 5240 during the interval between the striking off of the property to the highest bidder at the sheriff's sale, and the delivery of the deed. The court reasoned that relief could be granted during this interval because title is not transferred until the deed is delivered. *Hoffman* does not strengthen Charlotte's case, since neither Charlotte nor any other person requested a setoff during the period between Charlotte's purchase of Conrad's interest and the delivery to her of the deed.

toppel, they also, we think, fairly indicate that New York courts require that an equitable right be asserted by the one who possesses it. *Cf. Guardian Loan,* 47 N.Y.2d at 521, 419 N.Y.S.2d at 60, 392 N.E.2d at 1243 ("*where the judgment debtor* can show not merely disparity in price, but in addition [misconduct] ... a court of equity may grant relief" (emphasis supplied, citation omitted)). Equitable relief was therefore properly granted in *Wandschneider,* where the judgment debtor, the very day after the sale, commenced proceedings to set the sale aside. In contrast, the judgment debtor in this case, Conrad, has never asserted a claim to a setoff. Nothing in New York law suggests that a non-mortgagee judgment creditor who purchases his debtor's property suffers an equitable setoff regardless of whether the debtor ever asserts his rights. Moreover, we believe that a New York court would be particularly reluctant to grant equitable relief in the present case, as Conrad's failure to claim a setoff may reflect an intent to retain in the family property otherwise subject to redemption for unpaid taxes.

We thus conclude that CPLR 5240 did not authorize a setoff against Charlotte's judgment, and that a New York court would not have used its equity powers to grant a setoff. It follows that Charlotte's purchase of Conrad's property satisfied her judgment only to the amount of her $50 bid. The district court should have permitted the government to redeem the property from Charlotte for $50 plus interest.

Our decision is fair to Charlotte. After the government redeems the property Charlotte may, if she chooses, enforce against Conrad her outstanding judgment less fifty dollars and levy against such other property as Conrad may own. Charlotte does not claim that she placed primary reliance upon Conrad's interest in the factory for the satisfaction of her judgment. But even if she did so rely, she could have protected herself against the effects of government redemption by bidding at the execution sale the lesser of the amount of her outstanding judgment and the fair market value of Conrad's interest. A purchasing lienor may be charged with knowledge that under the federal tax statute she risks being left with the right to become a judgment creditor of the debtor as her sole recourse on the outstanding obligation unless she bids the price at the execution sale up to the amount of the obligation. *Cf. Equity Mortgage Corp. v. Loftus, supra,* 504 F.2d at 1079. Having chosen to bid a mere $50, Charlotte is bound by that figure.

Reversed and remanded.