2011 OK CIV APP 18

**LITTLE BEAR RESOURCES, LLC, Plaintiff/Appellee,**

v.

**NEMAHA SERVICES, INC., Defendant/Appellant.**

No. 106,395.

Court of Civil Appeals of Oklahoma, Division No. 3.

Jan. 14, 2011.

Mary Anne McGee, Oklahoma City, OK, for Plaintiff/Appellee.

Jon W. Laasch, Jacobson & Laasch, Edmond, OK, for Defendant/Appellant.

BAY MITCHELL, Judge.

¶ 1 Appellant Nemaha Services, Inc. (Nemaha) appeals the trial court's order confirming the sheriff's sale of certain real property upon a writ of general execution in favor of Little Bear Resources, LLC (Little Bear) to collect on a judgment. Nemaha contends the full appraised value of the property of $160,000 should have been credited against Little Bear's judgment instead of Little Bear's purchase price of $107,000 at the sheriff's sale.

¶ 2 Nemaha initially sued Little Bear for damages arising out of Little Bear's oil and gas operations on Nemaha's property. Subsequently, the case was submitted to arbitration. The arbitrator found in favor of Little Bear and ordered Nemaha to pay Little Bear

$175,341.61. The arbitration award was confirmed by the trial court.[1]

¶ 3 The trial court issued a writ of general execution in favor of Little Bear to collect on its judgment. A Notice of Sale of Property by Sheriff of real property owned by Nemaha was filed, and in compliance with 12 O.S.2001 § 759, three uninterested parties appraised Nemaha's property and estimated its value at $160,000. Neither party disputed the appraised value of the property.

¶ 4 At the sheriff's sale, the judgment creditor Little Bear purchased the property for $107,000 (2/3 of its $160,000 appraised value). In response to Little Bear's motion to confirm the sheriff's sale, Nemaha argued the appraised value of $160,000 should be applied as a credit against Little Bear's underlying judgment against Nemaha, rather than the $107,000 sale price obtained at the sheriff's sale. The trial court disagreed and in the Order Confirming Sale, it ordered the $107,000 purchase price be applied as a credit against the judgment. The parties do not dispute that the sheriff's sale was conducted fairly and resulted in a statutorily proper bid. The sole issue on appeal is whether the trial court erred in applying the $107,000 against Little Bear's judgment instead of the full appraised value of $160,000.

¶ 5 "The standard of review of a motion to confirm a sheriff's sale is abuse of discretion." *Bank One, Oklahoma, N.A. v. Tanner,* 2001 OK CIV APP 57, ¶ 16, 23 P.3d 977, 979 (citing *Drummond v. James,* 1931 OK 263, 150 Okla. 105, 300 P. 658, *Fleet Real Estate Funding Corp. v. Frampton,* 1991 OK CIV APP 32, 812 P.2d 416).[2] The trial court has the inherent power to vacate a sheriff's sale and deny the motion to confirm the sale based on equitable grounds. *Hays v. Burton,* 1958 OK 26, ¶¶ 5, 7, 321 P.2d 701, 704. Confirmation of a sheriff's sale may be reversed on three separate grounds:

(1) the sale price is so grossly inadequate that it shocks the conscience of the court; (2) the sale price is grossly inadequate and the sale is tainted by additional circumstances; or (3) the result is inequitable to one or more of the parties before the court, whether owner, purchaser, or creditor.

*United Oklahoma Bank v. Moss,* 1990 OK 50, ¶ 20, 793 P.2d 1359, 1364.

¶ 6 Little Bear contends the trial court's application of $107,000 versus $160,000 as credit against its judgment was not inequitable to Nemaha.[3] Little Bear points to the fact the sheriff's sale resulted in a sale slightly in excess of the two-thirds of appraised value required by statute. Little Bear further argues judgment creditors are neither required to bid the appraised value of property, nor required to release any deficiency judgment as a condition precedent to the confirmation of the sheriff's sale. However, Nemaha specifically admitted it had no objection to the amount of the sheriff's sale price, rather only to the application of the sale price as credit against Little Bear's judgment. Similarly, Nemaha has not suggested that Little Bear's deficiency judgment be extinguished as a result of the sheriff's sale.

¶ 7 Little Bear argues Nemaha should be unable to complain of inequity in the trial court's order, because Nemaha was less than forthcoming regarding its assets in

---

1. The trial court's order confirming the arbitration award was affirmed by the Oklahoma Court of Civil Appeals, Division II (Case No. 105,457).

2. " 'The term 'discretion' denotes the absence of a hard and fast rule and, when it is invoked as a guide to judicial action, means 'sound discretion'; this is held to mean a discretion not exercised willfully or arbitrarily, but with a regard to what is right and equitable under the circumstances.' *Stewart v. Oklahoma Tax Comm'n,* 1946 OK 132, ¶ 14, 168 P.2d 125, 128. What constitutes 'abuse of discretion' in a particular matter depends upon the circumstances and the law surrounding each case. *Id.* at ¶ 15, 168 P.2d at 129." *Osborne v. Mollman Water Condition-*

*ing, Inc.,* 2003 OK CIV APP 20, ¶ 19, 65 P.3d 632.

3. Little Bear argues Nemaha failed to cite any legal authority supporting its position the trial court's decision was inequitable, and as such Nemaha's position should not be considered pursuant to Supreme Court Rule 11(e). It is worth noting that no reported Oklahoma decisions deal directly with the issue raised in this case, so no violation of Rule 11(e) is found. This Court further recognizes that neither party fully complied with provision of Rule 11(e) requiring proper citations to the record to support statements of fact.

post-judgment proceedings. "[A] basic rule of equity jurisprudence is that equity will refuse to lend its aid to one seeking its active interposition who has been guilty of any unlawful or inequitable conduct in the matter with relation to which he seeks relief." *State, ex rel. Dept. of Human Services v. Baggett*, 1999 OK 68, ¶ 22, 990 P.2d 235, 244. Little Bear has made no claims that Nemaha is guilty of any "unlawful or improper conduct" in relation to the sheriff's sale. Accordingly, this doctrine is inapplicable to the issues before this Court.

¶ 8 The principles of equity allow the trial court to "decree such relief to the parties as appears just and right, and as best calculated to protect their rights under the situation presented by the record." *Sinclair Oil & Gas Co. v. Bishop*, 1967 OK 167, ¶ 58, 441 P.2d 436, 448 (*citing Foster v. Hoff*, 1913 OK 216, ¶ 0, (2nd syllabus), 37 Okla. 144, 131 P. 531, 531). In determining whether the trial court's application of the sheriff's sale value to Little Bear's judgment was equitable, Oklahoma's anti-deficiency statute 12 O.S.2001 § 686 is instructive.

¶ 9 Where applicable, § 686, Oklahoma's anti-deficiency statute, *mandates* the use of the fair market value to offset the judgment debt. In mortgage foreclosures, if the debt remains unsatisfied following the sheriff's sale, the creditor may move for a deficiency judgment, whereupon:

[T]he court ... shall determine ... the fair and reasonable market value of the mortgaged premises as of the date of sale or such nearest earlier date as there shall have been any market value thereof and shall make an order directing the entry of a deficiency judgment. Such post-judgment deficiency order shall be for an amount equal to the sum of the amount owing by the party liable as determined by the order with interest, plus costs and disbursements of the action plus the amount owing on all prior liens and encum-

brances with interest, less the market value as determined by the court or the sale price of the property whichever shall be the higher.

Similarly, in the last paragraph of § 686, pertaining to *in personam* actions on the debt secured by a mortgage, rather than the *in rem* foreclosure action, it states:

[A]ny party against whom a money judgment is demanded, shall be entitled to set off the fair and reasonable market value of the mortgaged property less the amounts owing on prior liens and encumbrances.

These statutory provisions only apply where the indebtedness is secured by a mortgage which is not the case here. There is no similar provision in Oklahoma law dealing with *unsecured* property being executed on by a judgment creditor. Similarly, no reported Oklahoma case law has addressed this issue.

¶ 10 The Oklahoma Supreme Court considered in *Riverside Nat'l Bank v. Manolakis*, 1980 OK 72, 613 P.2d 438, whether the principal debtor's protections from deficiency judgments in 12 O.S.1971 § 686 should also extend to *guarantors*. *Riverside* held that § 686 does not extend to guarantors and notes that the rights and obligations under guaranty agreements are governed by the provisions of 15 O.S. §§ 321–344. *Riverside* noted Oklahoma's anti-deficiency statute had adopted the same statutory wording as the New York anti-deficiency statute [4], and suggested Oklahoma courts would adopt a construction of § 686 similar to New York courts, except as to guarantors which in Oklahoma, unlike New York, are subject to their own statutory scheme.[5] New York courts have applied the New York anti-deficiency statute, N.Y. Real Prop. Acts. Law § 1371 (1962), in cases involving the foreclosure of judgment liens.

¶ 11 In *Wandschneider v. Bekeny*, 75 Misc.2d 32, 346 N.Y.S.2d 925 (N.Y.Sup.Ct. 1973), the Supreme Court of New York, Westchester County discussed the origin of

---

4. N.Y. Real Prop. Acts. Law § 1371 (1962).

5. "In *Ingerton v. First National Bank and Trust Co.*, 291 F.2d 662 (10th Cir.1961), later appeal on other related issue, 303 F.2d 439 (10th Cir. 1962), the court theorized that because Oklahoma adopted the same statutory wording we

would adopt construction identical to that of the New York courts. This hypothesis seems valid until the application of the anti-deficiency statute to guarantors is raised as an issue." *Riverside* at ¶ 7, fn. 7, 613 P.2d at 440.

its anti-deficiency statute[6] and concluded equity required the same rule (that the judgment debtor be allowed a credit against its debt for the sum representing the fair market value of the property sold) be applied to execution sales on judgment liens. Otherwise, the result is described as "unjust and oppressive," "unconscionable" and an "undeserved windfall" for the creditor. *Id.*, 75 Misc.2d at 34, 38, 346 N.Y.S.2d at 927, 931.[7] While New York case law is certainly not controlling here, the reasoned construction of New York's similar statute is logical and equitable. Oklahoma courts should similarly apply the equitable principles of 12 O.S.2001 § 686 to execution on judgment liens to allow a debtor to receive full credit for the value actually received by the creditor—the fair market value of the property[8] (or the sales price if it is higher). No good reason exists to treat judgment liens differently than if they were specifically included within the provisions of § 686.

¶ 12 Numerous other states have adopted anti-deficiency legislation requiring the application of fair market value to limit deficiency judgments.[9] The Pennsylvania anti-deficiency statute has been applied to judgment debtors since its inception.[10] Nevada has similarly applied the fair market value to actions involving any creditor/debtor relationship in which execution upon real property has occurred.[11] Oklahoma courts sitting in equity should follow the reasoning of such other states to allow the same protection against a windfall for the judgment creditor as recognized in 12 O.S.2001 § 686. In situations where the judgment creditor purchases the judgment debtor's property at a sheriff's sale, the judgment debtor must be entitled to "set off the fair and reasonable market value of the property less the amounts owing on prior liens and encumbrances."

¶ 13 Where there has been a sheriff's sale of property and the creditor (here, Little

**6.** "The purpose of the legislation was to prevent the then existing inequity of 'a double recovery for one debt' ... It gave to mortgagees the sure knowledge of being made whole in one proceeding and ended the unfair practice of mortgagors losing their equity of redemption and still being called upon to repay virtually unreduced judgments." *Wandschneider*, 75 Misc.2d at 36–37, 346 N.Y.S.2d at 930 (internal citations omitted).

**7.** *See also Yellow Creek Hunting Club, Inc. v. Todd Supply, Inc.*, 145 A.D.2d 679, 680, 535 N.Y.S.2d 222 (N.Y.App.Div.1988) (internal citations omitted): "[T]here seems to be a general policy in this State of protecting property owners by reducing a mortgage or mechanic's lien debt by the reasonable or fair market value of the property at the time of sale. Such principles would seem to apply to a judgment debt as well and CPLR 5240 seems designed to allow a court to grant such protection."

**8.** Because neither party disputed the appraised value of the property, it is equitable to rely upon the appraised value as the estimated "real value of the property." 12 O.S.2001 § 759(B).

**9.** Other states with anti-deficiency legislation are Arizona, California, Georgia, Idaho, Michigan, Nebraska, Nevada, New Jersey, North Carolina, North Dakota, Pennsylvania, South Dakota, Utah, Washington and Wisconsin.

**10.** *Union Trust of New Castle v. Tutino*, 353 Pa. 145, 148–149, 44 A.2d 556, 558 (Pa.1945) ("The intention, as the title and contents of the Act indicate, was to protect judgment debtors whose

real estate is sold in execution, by requiring the plaintiff to give credit for the value of the property he purchased at his execution and not merely to credit the price at which it was sold. The statute deals primarily with judgments and not with mortgages except as incidentally a mortgage may have been given as security; it applies whenever 'any' real property, whether mortgaged or not, has been sold, in execution, for less than the judgment debt ..."). *See also First Nat'l Consumer Discount Co. v. Fetherman*, 515 Pa. 85, 96, 527 A.2d 100, 105 (Pa.1987) ("[T]he purposes of the Deficiency Judgment Act, which was enacted to remedy an inequity resulting to judgment debtors when the judgment creditor bought the debtor's property at a forced sale.... Under the Deficiency Judgment Act, the creditor's judgment is to be reduced by the fair market value of the property bought by the creditor rather than by the sale price.")

**11.** *First Interstate Bank of Nevada v. Shields*, 102 Nev. 616, 618, 730 P.2d 429, 431 (Nev.1986) ("[F]airness is accorded obligors by permitting creditors who have sought to satisfy an indebtedness through sale of a trustor's or mortgagor's realty, to secure a deficiency judgment only to the extent any alleged deficiency exceeds the fair market value of the sold realty. In other words, obligors are assured that creditors in Nevada may not reap a windfall at an obligor's expense by acquiring the secured realty at a bid price unrelated to the fair market value of the property and thereafter proceeding against available obligors for the difference between such a deflated price and the balance of the debt.")

Bear) purchases the property at the sale, the value accruing to creditor is not merely the amount of its bid. Little Bear received property of a certain value (here, $160,000), which is well in excess of its successful bid of $107,000. The value received by Little Bear exceeds the amount credited to its judgment against Nemaha, yielding an inequitable result. In order to adequately protect both Little Bear and Nemaha, the full appraised value of the property ($160,000) should have been credited against Little Bear's judgment.

¶ 14 As such, this Court finds the application of Little Bear's purchase price at sheriff's sale (rather than the greater appraised value) as credit against its judgment was inequitable and an abuse of the trial court's discretion. As discussed herein, Nemaha was entitled to receive full credit for the appraised "real value" of the property, $160,000, less any expenses or costs of the action, to be applied against the judgment in favor of Little Bear. This case is reversed and remanded for further proceedings consistent herewith.

¶ 15 REVERSED AND REMANDED.

JOPLIN, P.J., and BELL, V.C.J., concur.