Nat H. Hentel, J.
This is a motion to annul and set aside an alleged Marshal’s sale on May 2,1973 of defendant judgment debtor’s assets, and to direct the City Marshal involved to accept the sum of $142 from the defendant, representing the balance due, in full satisfaction of the judgment in favor of the plaintiff.
After a thorough hearing, and the taking of sworn testimony, and the introduction of documentary evidence pursuant to my order of May 24, 1973, the court finds as follows;
*274 1. The City Marshal, by virtue of an execution issued from this court, levied upon certain specified personalty belonging to the defendant corporation, and noticed the same for public sale on July 27, 1972. The total of the judgment, including interest and Marshal’s fees, then came to $613.56.
2. By arrangement made between the defendant’s president and the City Marshal, installment payments were worked out, and defendant did, in fact, pay all of the judgment except $142 in the next six or seven months. The defendant’s president and sole owner then fell ill in February and March, 1973, during which time he was confined to the Queens General Hospital for abdominal surgery and during which time his business was closed down.
3. On or about April 12, 1973, when defendant’s president was released from the hospital, he met with the City Marshal and told him: “ I will re-open the business and I will give you the $142 owed in two weeks.” Actually, defendant’s president testified he would pay on May 2, 1973, and the City Marshal testified the promise to pay would be in two weeks’ time.
4. Thereafter, and on May 2, 1973, at approximately 11:00 a.m., the City Marshal sold all of defendant’s assets, furnishings, materials, machinery, and defendant’s president’s personal tools then on defendant’s premises, after making forcible entry therein, to the highest bulk bidder amongst 15 unidentified persons, for the total sum of $175. Defendant’s president testified that he was not aware of the sale until after he arrived at his premises at about 11:30 a.m, on May 2, 1973. He testified that the Marshal did not tell him that his assets were to be publicly sold; that he received no notice of adjourned sale either at hisjresidence or place of business; that he received no telephone call from the Marshal; nor did he receive a copy of the advertisement of sale which appeared only in the New York Times of May 2, 1973, the very morning of the sale. The Marshal added nothing in the way of proof that the defendant had been served with any notice nor did he produce a notice of adjourned sale.
5. Upon arriving at his premises, defendant’s principal testified that he inquired as to what was going on and was advised by a Samuel Kamins, who was not present at the Marshal’s sale, that he had purchased the assets from the one who allegedly made the high bid at the public sale, minutes after the Marshal concluded the sale and had left the premises. In fact, Mr. Kamins stopped the City Marshal in his car, after recognizing , him, away from the defendant’s premises and ascertained that *275 the sale had been completed. Mr. Kamins thereafter allegedly bought the Marshal’s bill of sale from the alleged auction purchaser for $1,500, allegedly paying $1,050 in cash down. Mr. Kamins, when asked to produce proof of such payment, receipt therefor, or the original of the bill of sale indorsed over to him as a purchaser in due course, did not produce any such documentary evidence. (Note: Incidentally, after the hearing the court was advised by defendant’s attorney that the notice of this hearing served by mail upon Mr. Kamins at his last known address was returned by the post office to the sender undelivered. The court wonders how Mr. Kamins knew of the hearing and appeared as a result of such knowledge.)
6. The City Marshal testified that he had made the sale to an individual he had seen before at such public sales, who identified himself as “ Tony Greco ” of Auction Outlet Co., 3660 White Plains Road, Bronx, New York. Mr. Kamins testified that he bought the assets from a u Milton Smoke ” whom he had met on a number of previous occasions, and that Mr. Smoke had told Mm when he arrived at the premises (before the arrival of the defendant’s principal), that he had made the purchase from the City Marshal. The Marshal testified that he did not know anyone by the name of Milton Smoke. Mr. Kamins testified that he did not know anyone by the name of Tony Greco. It appears from the physical description by Kamins of Smoke, and of Greco by the Marshal, that Greco and Smoke could be one and the same person.
7. Upon allegedly making the purchase for $1,050, cash down, Mr. Kamins claims Mr. Smoke indorsed the Marshal’s bill of sale over to him. Again, Mr. Kamins did not produce the original of his alleged bill of sale so indorsed to him; and the court notes that the Marshal’s copy of the bill of sale in evidence shows the alleged purchaser to be Auction Outlet Co., 3660 White Plains Road, Bronx, New York (Tony Greco). The City Marshal also testified that he knew Kamins before this sale, but had never done business with him. He also investigated Auction Outlet Co., after receiving a telephone call following the sale from the defendant’s attorney, on May 2, 1973. He could find no telephone or street listing for Auction Outlet Company at the indicated address. He stated that he called the street address, and that a Campbell Corporation answered and that a Mr. Greco got on the telephone. The Marshal told Mr. Greco that “lam shocked at the resale negotiations and I want to return the properties at a more reasonable price to the defendant.” This, after defendant’s attorney had apprised him i^.. *276 the afternoon of May 2, 1973 that, upon defendant’s principal arriving at his premises at about 11:30 a.m., after the sale, that Kamins offered to resell to the defendant the same assets for $1,700. Mr. Greco reportedly told the Marshal it was out of his hands.
8. Subsequently, Mr. Kamins offered to sell the same assets to the defendant for $1,050.
9. Defendant’s principal was ready and able to pay the $142 balance of the plaintiff’s judgment to the Marshal on May 2, 1973.
10. When asked about his sale procedures, it is interesting to note that the Marshal said: “ People learn of my sales the same day of the sales from my ads in the New; York Times. They attend when I advertise. I conduct six or so sales a year. And the same faces appear at my sales. Kamins is familiar to me as is Greco — they are regular attendees at my sales.”
11. The City Marshal testified that he ‘ ‘ was shocked at the resale news received from defendant’s attorney on May 2, 1973; that we never came across such a situation before; the entire transaction shocked me when I learned that the assets were sold for $1,500.” He also said that he would not know what was sold on May 2, 1973; no itemized inventory was made by him; and that he sold whatever was there. Also, he said none of defendant’s employees were present when the sale was made. The premises had been locked, and he broke info the premises. He claims he had no idea of the value of the assets sold, but he also admits that he had the right to postpone a sale if he felt the bidding was insufficient.
12. Mr. Kamins testified he had done business with Mr. Smoke before. Mr. Kamins further stated as a self-confessed expert in buying and selling scrap metal and used machinery that defendant’s assets in his opinion were worth between $2,500 to $2,800.
13. A complaint was filed by defendant with the Department of Investigation, City of New York, concerning the circumstances of the sale which defendant claims was collusive in nature, irregular under the law, and without regard to the actual or market value of the assets purportedly sold — all to the great damage and loss of the defendant.
14. The only opposition filed to this motion came from the City Marshal, who is represented by the plaintiff’s attorney. Plaintiff did not appear or oppose the motion. Auction Outlet Company, the alleged purchaser of the assets or its agent Tony Greco, did not appear or oppose this motion. Campbell *277 Corporation did not appear or oppose this motion. Mr. Kamins appeared personally, testified, but did not oppose this motion. A default by all concerned except the Marshal is thus noted.
Under all of the circumstances, the court does not believe that the City Marshal conducted a valid sale:
(a) Apparently no appropriate notice of the adjourned sale was given to the defendant.
(b) The court questions the bona fides of a public auction accomplished in approximately three minutes’ time from the opening of the sale by the Marshal on May 2, 1973, of goods and equipment worth at least $2,500, for $175.
(c) Who was the purchaser? Tony Greco or Milton Smoke? Both are known by face to the Marshal. Yet, he sells to Greco, but Smoke tells Kamins he bought the assets at the sale from the Marshal. Why the use of a dummy name for the purchaser? Why does not Smoke produce an indorsed bill of sale to him? The whole thing smells of a forced and hurried assets sale on the same day defendant was ready to pay a meager judgment balance of $142, all to the overriding and unjust detriment to the defendant.
(d) It is significant to note that the City Marshal in his affidavit in opposition to this motion does not name the purchaser of defendant’s assets at the auction sale.
(e) And then to cap insult with injury, Mr. Kamins, who claims title by the Marshal’s sale through Mr. Smoke, seeks within the half hour of the sale to sell defendant’s assets back to him for $1,700. Unconscionable! This seeks to feed upon the misery of a distressed, ailing and harried businessman trying to keep his business going, and his employees working. Justice will not permit this court to countenance and continue such a patently unjust situation.
The motion to set aside the sale is granted, accordingly, and the alleged sale is declared a nullity. Defendant and its president may take immediate possession of all their corporate and personal assets and continue doing business if they so choose. Defendant is directed to pay the sum of $142 to the City Marshal in full satisfaction of plaintiff’s judgment, without further interest or costs, at the same time that it serves a copy of this order upon the City Marshal and the others listed in the moving papers — all without delay.
The court has asked the Department of Investigation of the City of New York to furnish it with a confidential copy of its investigation report when completed within the next 10 days. If the court finds factual information contained therein leading to *278 a belief that indeed a collusive, fraudulent or improper sale was made, it is the court’s intention to recommend that the Bureau of City Marshals of the Department of Investigation take appropriate administrative or legal action as may be required.