OPINION OF THE COURT
Chief Judge Cooke.
We determine here whether the provisions of CPLR 5240 may be utilized to set aside a lawfully consummated Sheriff’s sale once the real property has been struck off and a deed delivered to a stranger to the underlying judgment. We hold that while the statute vests the court with broad discretion to prevent abuse in the use of the enforcement procedures of CPLR article 52, it furnishes no grounds for relief once those procedures have been carried out in accordance with law.
Plaintiff, not a party to this appeal, obtained a judgment against respondents Early for $1,268.93 which was docketed in the office of the Suffolk County Clerk on July 14, 1976. After respondents had failed to satisfy the judgment, plaintiff delivered a real property execution, with notice to respondents, to the Suffolk County Sheriff for the sale of respondents’ residence. The sale was duly advertised for May 23, 1977 in accordance with CPLR 5236 (subd [c]) but was adjourned twice at the request of respondents (see CPLR 5236, subd [d]). Finally, on August 1, 1977, the property was struck off to appellant Berlin, a stranger to the underlying judgment, for the sum of $3,020. Two days later, the Sheriff, after deduction of his proper fees, distributed the proceeds of the sale to judgment creditors who had filed executions and delivered a deed to the property to appellant.
This proceeding to set aside the sale was brought on by order to show cause. In support of their request for relief, respondents averred that on August 1, 1977 they had approximately $1,100 in cash — a sum which would have been inadequate to redeem the property prior to the sale — but were *518 unable to reach the place of sale on time because of a flat tire. It was asserted upon information and belief that the property had a márket value of between $55,000 and $60,000 (later revised to $48,000) and was subject to a mortgage balance of approximately $9,000. In opposition, appellant disputed the value of the property and set forth an abstract of title showing an unsatisfied 1975 Federal tax lien in the amount of $5,688 plus interest as well as several prior unsatisfied liens totaling over $6,000. Supreme Court set aside the sale, relying on CPLR 5240. A divided Appellate Division affirmed (64 AD2d 689). We must now reverse.
The enactment of CPLR article 52 effected sweeping changes of both substance and procedure in the law relating to the satisfaction of money judgments. Nowhere were these changes more apparent than those with respect to the procedures involving the sale of real property (see Sale of Real Property Pursuant to an Execution under the CPLR, Tenth Ann Report of NY Judicial Conference, 1965, p 120). Perhaps the most striking change accomplished by the CPLR was the abolition of the debtor’s right of redemption upon sales to enforce money judgments (CPLR 5236). The Civil Practice Act had previously contained a number of rather complex provisions under which the judgment debtor or his creditors could redeem property after it had been sold upon execution (Civ Prac Act, §§ 758-763). It was thought that substantially higher prices could be realized upon execution sales were the right to redeem eliminated (see 6 Weinstein-Korn-Miller, NY Civ Prac, par 5236.02). While this rationale may not have been borne out in actual experience (see Community Capital Corp. v Lee, 58 Misc 2d 34, 35-36), the purchaser at a Sheriff’s sale now takes immediate title to the property and is placed in the same position as he would have been if the deed had been executed by the judgment debtor himself (see Hetzel v Barber, 69 NY 1, 10).
Any judicial sale, especially one involving the judgment debtor’s residence, is a tragic event. Debtors are often divested of their only real asset to satisfy a previous obligation, however small. In many instances, the family home is sold for substantially less than the debtor’s equity in it (see Concord Landscapers v Pincus, 41 AD2d 759, 760; Wandschneider v Bekeny, 75 Misc 2d 32). Even the very threat of a sale of a residence places enormous pressure on the debtor. This is particularly unfortunate where there are less drastic means *519 by which a creditor may enforce his judgment (see, generally, CPLR 5231 [income execution]; CPLR 5232-5233 [levy and sale of personal property]). It is evident, however, that the Legislature was not unaware of this problem. For example, it has recently raised the homestead exemption, which provides that upon a judicial sale of the debtor’s principal place of residence, the first $10,000 of the proceeds representing the debtor’s equity may not be used in satisfaction of the judgment (CPLR 5205, subd [a]).
CPLR 5240 is perhaps the most practical method to protect judgment debtors from the often harsh results of lawful enforcement procedures. The statute provides: "The court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure. Section 3104 is applicable to procedures under this article.” Designed to replace myriad provisions of the Civil Practice Act which often led to conflicting results (see 10 CarmodyWait 2d, NY Prac, § 64:434), CPLR 5240 grants the courts broad discretionary power to control and regulate the enforcement of a money judgment under article 52 to prevent "unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts” (Third Preliminary Report of the Advisory Comm on Practice and Procedure, 1959, p 314; see Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 5240:1, pp 451-452; Siegel, New York Practice, § 522).
Although on the whole judgment debtors have failed to take advantage of the protective provisions of CPLR 5240, in many instances the statute has been applied in an extremely beneficial manner in accordance with its stated purpose. By way of illustration, courts have restrained impending sales of residences on the ground that creditors could easily resort to less intrusive means to satisfy judgments (see Hammond v Econo-Car of North Shore, 71 Misc 2d 546; Holmes v W. T. Grant, Inc., 71 Misc 2d 486; Gilchrist v Commercial Credit Corp., 66 Misc 2d 791). In other cases, where there has been a showing that a judicial sale will not bring a representative price, the terms of the sale have been varied from those set forth in CPLR 5236 to safeguard the judgment debtor’s interest (see, e.g., Olsen v Robaey, 45 Misc 2d 33).
But while CPLR 5240 grants the courts broad discretionary *520 power to alter the use of the procedures set forth in article 52, it has no application after a Sheriffs sale has been carried out and the deed delivered to the purchaser, at which time the use of the enforcement procedure will have been completed (see Matter of Bachner, 82 Misc 2d 107, 108; Murphy v Grid Realty Corp., 73 Misc 2d 1071, 1072-1073; cf. Kaplan v Supak & Sons Mfg. Co., 46 Misc 2d 574, 578). After the sale has been consummated, the interests of persons other than the judgment debtor and creditor are implicated. Title to property has been transferred, often to a stranger to the judgment who relies on the regularity of the sale and proceeds accordingly. To permit these sales to be set aside merely because a beneficial price has not been obtained especially in view of the "at any time” provision of CPLR 5240, would discourage participation by third parties at judicial sales, for the title acquired at the sale would never be free from the spectre of judicial invalidation. Had the Legislature intended this statute to have such drastic consequences, it surely would have made its intention plain (see CPLR 2003; Murphy v Grid Realty Corp., supra, pp 1072-1073). It would not have expressly limited the application of the statute to "the use of any enforcement procedure”. Indeed, to permit CPLR 5240 to be used to set aside already completed execution sales would be tantamount to a judicial resurrection of the concept of equity of redemption — a remedy purposefully deleted from article 52 by the Legislature and one which we have no right to invoke. However unfortunate the judgment debtor’s plight may be, CPLR 5240 relates to the use of an enforcement device; it has no application after the threatened use of an enforcement procedure is a fait accompli.
This is not to say that a judgment debtor is without remedy once a judicial sale has taken place. CPLR 2003 grants the power to. set aside such a Sheriffs sale within one year "for a failure to comply with the requirements of the civil practice law and rules as to the notice, time or manner of such sale, if a substantial right of a party was prejudiced by the defect” (see McCoy v Bailey, 24 Misc 2d 875; Eidlitz v Doctor, 24 Misc 209). And, of course, the court may exercise its inherent equitable power over a sale made pursuant to its judgment or decree to ensure that it is not made the instrument of injustice (see Wesson v Chapman, 76 Hun 592). Although this power should be exercised sparingly and with great caution, a court of equity may set aside its own judicial sale upon *521 grounds otherwise insufficient to confer an absolute legal right to a resale in order to relieve of oppressive or unfair conduct (see Fisher v Hersey, 78 NY 387; Crane v Stiger, 58 NY 625; King v Platt, 37 NY 155).
In this case, the sale was conducted in strict conformity with statutory procedure (see CPLR 5236), rendering CPLR 2003 inapposite. Nor do general equitable principles furnish respondents any basis for relief. While the sale price was less than respondents’ equity in the property, the simple fact is that in most instances the fair market value of the property will exceed the winning bid at an execution sale (Matter of Superintendent of Banks of State of N. Y., 207 NY 11, 16). For this reason, it is well settled that mere inadequacy of price— the only pertinent showing here — does not furnish sufficient grounds for vacating a sale (Clapp v McCabe, 155 NY 525, 532; State Realty & Mtge. Co. v Villaume, 121 App Div 793, 795; American Ins. Co. v Oakley, 9 Paige Ch 259; Woodhull v Osborne, 2 Edw Ch 614). Courts are alert to the inherent inequality of bargaining power in these instances. Where the judgment debtor can show not merely disparity in price, but in addition one of the categories integral to the invocation of equity such as fraud, mistake or exploitive overreaching, a court of equity may grant relief (see Fisher v Hersey, 78 NY 387, supra; Riggs v Pursell, 66 NY 193, 198; Housman v Wright, 50 App Div 606; Colonial Steel Corp. v Piquin, Inc., 74 Misc 2d 273).
Although respondents’ plight is certain to evoke sympathy, here the record is devoid of any showing warranting intervention by a court of equity. Respondents had obtained two postponements of the sale, giving them more than three months after they had received notice that their property was to be sold to satisfy plaintiff’s judgment. During that period, they could have avoided the sale by satisfying the judgment. Even on the day of the sale, respondents did not have sufficient funds to meet this obligation. Their delay in arriving at the sale is in no way attributable to appellant or any person connected with the sale and those in attendance had no knowledge of respondents’ transportation difficulties. Respondents’ rights were protected to the fullest extent that the law provides. What remains, then, is a Sheriffs sale consummated in complete accord with lawful procedure which, as is often the case, failed to realize the full equity of the judgment debtor. This factor, standing alone, does not provide cause to *522 invalidate the sale. Having failed to take advantage of the ameliorative provisions of CPLR 5240 and there having been no showing that Berlin is not a bona fide purchaser, respondents may not now set aside the sale.
Accordingly, the order of the Appellate Division should be reversed, without costs, and the motion to set aside the Sheriff’s sale denied.
Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur; Judge Fuchsberg taking no part.
Order reversed, etc.