OPINION OF THE COURT
David Friedman, J.
The motion pending before the court concerns plaintiff’s attempt to collect a money judgment from defendant via an income execution. Besides the judgment, defendant is also subject to a court order requiring him to pay temporary maintenance and child support. The issue that the motion *588 presents is whether a spouse voluntarily complying with a court order requiring such support payments is to be treated more harshly vis-á-vis judgment creditors than a spouse making support payments under the compulsion of an income execution. In my view, the statutory framework covering the issue does in fact provide for a disparity in treatment. However, the broad discretion conferred upon the judiciary when dealing with income executions permits an approach which ameliorates the stricter rules applicable to the voluntarily paying spouse. The stated legislative goal of encouraging payment of support mandates utilization of that approach.
The genesis of this matter is a default judgment of $8,588.22 obtained by plaintiff against defendant, an employee of the State of New York. Since defendant failed to pay the judgment, an income execution was issued against him and his employer was directed to deduct and remit 10% of his wages. In fact, beginning with defendant’s December 31, 1991 paycheck, the 10% deductions were made.
The factor complicating the above situation is a matrimonial action involving the defendant. In that proceeding he has been ordered to pay temporary maintenance and child support of $300 per week by the Supreme Court, Westchester County (Fredman, J.). Defendant avers that he has in fact been making those payments out of a weekly disposable income (gross earnings less taxes) of $719.35.
It is defendant’s position that the income execution emanating from the judgment cannot coexist with the court-ordered maintenance and child support payments when the amount of his weekly disposable income is considered. Pointing to CPLR 5231 and 5240 defendant moves for an order granting him protective relief, staying enforcement of the income execution and directing that the sums collected under the income execution be returned.
Resolution of plaintiff’s request for relief necessitates examination of CPLR 5231 and 5240 as well as section 5241. CPLR 5241 deals with steps that may be taken to enforce payment of family support orders. Pursuant to its terms, "[W]here a debtor-spouse is in default of family support payments, the creditor-spouse may obtain an income execution * * * [and] income executions for [such] payments * * * may garnish as much as 65% of a debtor’s disposable income.” (Midlantic Natl. Bank/N. v Reif, 732 F Supp 354, 358, n 2.)
CPLR 5231 provides generally for the recovery of money *589 judgments by the issuance of income executions. Subdivision (b) of CPLR 5231 places limitations on the amount that may be deducted from a judgment debtor’s earnings via an income execution. Pertinent here is paragraph (iii) of subdivision (b) which states that if deductions are being made from a judgment debtor’s earnings pursuant to CPLR 5241 (family support) and those deductions equal or exceed 25% of the judgment debtor’s disposable earnings, no deductions can be made from the judgment debtor’s earnings under a CPLR 5231 income execution. In other words, if a CPLR 5241 income execution is in effect more than 25% of the judgment debtor’s disposable earnings may not be deducted unless it is for family support. This crystallizes the dilemma and issue at bar. Does defendant, who has been paying his support obligations without forcing his spouse to resort to the income execution procedures of CPLR 5241, enjoy the benefit of the 25% cap provided by CPLR 5231 (b) (iii), for those judgment debtors who have forced resort to CPLR 5241 enforcement efforts?
This issue has been addressed by one nisi prius court which held that if the spouse was honorably discharging his obligations that is not equivalent to an income execution under CPLR 5241 so that the 25% cap of CPLR 5231 would be inapplicable (Tilden Fin. Corp. v Corwin, 149 Misc 2d 544). In reaching this conclusion, Tilden stated (at 545), "I am well aware that this statute (CPLR 5231) and my interpretation of it may have the effect of tempting if not inducing divorced husbands or wives to withhold support obligations in order to obtain the benefit of this statutory proviso”.
The Practice Commentaries in discussing Tilden (supra) makes the observation that "It would not be unreasonable, however, for the courts to construe CPLR 5231 (b) to cover support obligations being voluntarily carried out by the debtor.” (Siegel, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5231:4, 1992 Pocket Part, at 95.)
In my view the plain language of CPLR 5231 (b) does not permit the construction advocated by the Practice Commentaries. At the same time, the Tilden approach, which would encourage spouses not to pay support voluntarily, also seems to be an unacceptable outcome. In this regard it must be pointed out that CPLR 5241 represents a powerful legislative effort to see that support orders are paid, so much so that subdivision (h) of CPLR 5241 provides that "A levy pursuant to this section * * * shall take priority over any other assign *590 ment, levy or process.” This importance is further evidenced by the fact that support orders may take as much as 65% of disposable earnings while only 25% may be collected in enforcement of money judgments.
In view of this overwhelming legislative sense of concern for payment of support orders, I conclude that the only acceptable approach is one which encourages such orders to be paid voluntarily rather than relying upon the vagaries of income executions. As previously indicated, CPLR 5231 (b) as now in effect does not provide for the 25% limitation where compliance is voluntary. There are, however, two other statutory provisions which allow for the fashioning of relief.
These provisions are CPLR 5231 (i) and 5240. The former states, "(i) Modification. At any time, the judgment creditor or the judgment debtor may move, upon such notice as the court may direct, for an order modifying an income execution”.
CPLR 5240 provides as follows: "The court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure. Section 3104 is applicable to procedures under this article”. These enactments give the court broad discretionary power to regulate enforcement procedures (Guardian Loan Co. v Early, 47 NY2d 515, 519; Tweedie Constr. Co. v Stoesser, 65 AD2d 657). Thereby, there is a statutory basis authorizing the court to adjust the amount, if any, which may be deducted from defendant’s earnings in response to plaintiff’s income execution.
Remaining for consideration is a determination of whether this authority should be exercised, that is, whether an adjustment is warranted and its extent. In Midlantic Natl. Bank/N. v Reif (supra, at 357), the court, in discussing this subject, noted that in considering modifications of an income execution, each case turns on its specific facts and "modification comes, if at all, only to a debtor showing substantial hardship and an unfair burden in meeting obligations.”
What becomes apparent is that when circumstances such as those at bar are presented, i.e., a judgment debtor voluntarily paying more than 25% of his disposable earnings for court-ordered support, a hearing is mandated so that the judgment debtor may establish such hardship and burden as would warrant modification of the income execution. Considered otherwise, while CPLR 5231 (b) does not provide automatic *591 relief for a spouse voluntarily complying with a support order, upon a sufficient showing of hardship and burden, and bearing in mind the priority placed upon effecting payment of support awards as well as the protection received by a spouse paying under an income execution, the court may grant relief as a matter of discretion. The parties shall appear for a conference and hearing on the matter at 9:30 a.m. on October 29, 1992.