OPINION OF THE COURT
Joan B. Lefkowitz, J.
On March 16, 1992 plaintiff obtained a judgment in foreclosure, awarding it $208,993.29, plus interest, costs and an additional allowance. The judgment directed a sale of the *125 premises (a single-family home) by the Referee designated for that purpose. Thereafter, as reported in my prior decision, the following transpired (Crossland Mtge. Corp. v Frankel, Sup Ct, Rockland County, Aug. 4, 1992, Lefkowitz, J.):
"A public auction was held pursuant to published notice on June 30, 1992. Plaintiffs representative at the bidding had been given erroneous information and rather than open the bidding at $160,000 (with instructions to proceed to the amount of the judgment), he started at $34,400 and stopped at $43,000. Movant, whose daughter was the owner of the property being foreclosed, made the highest bid of $55,000. Movant had not expected to bid, and requested time to go to his bank to obtain a certified check for ten percent of the funds bid. The referee granted that request. During the approximate twenty minutes it took for movant to return with a certified check, plaintiffs representative telephoned plaintiff’s counsel’s office to confirm the bidding instructions and first learned of the error. He immediately informed the referee. Movant returned with a certified check for $5,500 drawn on a corporate account.
"The check was refused by the referee; the sale was reopened and the property struck down to plaintiff at [its] $160,000 bid.”
The unsuccessful bidder (who is the father of one of the mortgagors), Sheldon Buchman, moved for a stay to prevent delivery of the deed to plaintiff. The court noted that the Referee prudently exercised her discretion in allowing Mr. Buchman time to obtain a certified check. (Alben Affiliates v Astoria Term., 34 Misc 2d 246, 248 [Sup Ct, Queens County 1962]; see, Associates Fin. Servs. v Davis, 133 AD2d 601 [2d Dept 1987], appeal dismissed 71 NY2d 889 [1988], lv denied 72 NY2d 802 [1988] [can extend time for financing at closing]; Annotation, Judicial Sales — Bid—Means of Payment, 86 ALR2d 292 [1962]; 2 Mortgages & Mortgage Foreclosure in New York § 36:10.50 [1991 rev ed]; cf., Weil v Cerrato, 129 Misc 2d 1105 [Sup Ct, Westchester County 1985].) The court then held that on constraint of Greenwood Packing Profit Sharing Plan Trust v Fournier (181 AD2d 861 [2d Dept 1992]) the Referee was without power to reopen the bidding after having declared Mr. Buchman the successful bidder. Consequently, Mr. Buchman’s motion was granted so as to declare him the successful bidder and the Referee was directed to execute a deed to him forthwith, without prejudice to whatever application plaintiff might make to set aside the sale.
*126 Plaintiff followed correct procedure in immediately moving by order to show cause in this proceeding for an order setting aside the sale on the grounds of mistake and inadequacy of price.
[The court addressed the issue of mistake and concluded that ground, standing alone, did not warrant vacatur of the sale.]
PRICE INADEQUACY
The main thrust of plaintiff’s argument is that the bid price initially accepted by the Referee ($55,000), when measured against the virtually conceded market value of the property ($200,000), is grossly inadequate requiring that the sale be set aside. However, it is common knowledge that property sold by judicial sale results in a realized price lower than what could be obtained in a noncoercive arm’s length sale of the property. (Southold Sav. Bank v Gilligan, 76 Misc 2d 30, 31 [Sup Ct, Suffolk County 1973].)
If there is no irregularity and the price is adequate, the sale will not be set aside. (Chase Manhattan Bank v Leacock, 154 AD2d 646 [2d Dept 1989].) Mere inadequacy of price is not sufficient to set aside the sale. (Wandschneider v Bekeny, 75 Misc 2d 32, 34 [Sup Ct, Westchester County 1973, Gagliardi, J.].) The Court of Appeals in Guardian Loan Co. v Early (47 NY2d 515, 521 [1979]) has held: "While the sale price was less than respondents’ equity in the property, the simple fact is that in most instances the fair market value of the property will exceed the winning bid at an execution sale (Matter of Superintendent of Banks of State of N. Y., 207 NY 11, 16). For this reason, it is well settled that mere inadequacy of price— the only pertinent showing here — does not furnish sufficient grounds for vacating a sale (Clapp v McCabe, 155 NY 525, 532; State Realty & Mtge. Co. v Villaume, 121 App Div 793, 795; American Ins. Co. v Oakley, 9 Paige Ch 259; Woodhull v Osborne, 2 Edw Ch 614). Courts are alert to the inherent inequality of bargaining power in these instances. Where the judgment debtor can show not merely disparity in price, but in addition one of the categories integral to the invocation of equity such as fraud, mistake or exploitive overreaching, a court of equity may grant relief (see Fisher v Hersey, 78 NY 387, supra; Riggs v Pursell, 66 NY 193, 198; Housman v Wright, 50 App Div 606; Colonial Steel Corp. v Piquin, Inc., 74 Misc 2d 273).” It is only where the sale price was "unconscion *127 ably low” that vacatur is warranted. (Harbert Offset Corp. v Bowery Sav. Bank, 174 AD2d 650, 651 [2d Dept 1991].) Stated differently, where the price is grossly inadequate so as to shock the conscience or is considered inadequate and is accompanied by mistake or other factors "integral to the invocation of equity” (Guardian Loan Co. v Early, 47 NY2d 515, 521, supra), the sale may be set aside. (Hammermann v Ferguson, 50 AD2d 853 [2d Dept 1975], appeal dismissed 39 NY2d 797 [1976]; Alben Affiliates v Astoria Term., 34 Misc 2d 246, supra; 2 Mortgages & Mortgage Foreclosure in New York § 36:11.50 [1991 rev ed]; 13 Carmody-Wait 2d, NY Prac, Judicial Sales, § 88:36; 2A Warren’s Weed, New York Real Property, Judicial Sales, § 6.02 [2]; 79 NY Jur 2d, Mortgages, §§716, 717; Quail, Real Property Practice & Litigation, §§ 17.03, 17.04 [1990 ed]; 4 American Law of Property § 16.196 [1952 ed]; 3 Powell, Real Property 466; 55 Am Jur 2d, Mortgages, §§ 667, 673; 59 CJS, Mortgages, § 601 [b] [2]; 2 Wiltsie, Mortgage Foreclosure §§ 759, 760.)
The benchmark decision in this country on price inadequacy is the opinion of the United States Supreme Court in Ballentyne v Smith (205 US 285, 291 [1907]) which affirmed vacatur of the sale upon a finding that only a "meager sum” had been bid in at one seventh (or 14%) of actual value of the property. The Court held (205 US, supra, at 290): "[A] sale will not be set aside for mere inadequacy of price, unless that inadequacy be so gross as to shock the conscience, or unless there be additional circumstances against its fairness. But if there be great inadequacy, slight circumstances of unfairness in the conduct of the party benefited by the sale will be sufficient to justify setting it aside. Graffam v. Burgess, 117 U. S. 180, 191, 192. It is difficult to formulate any rule more definite than this, and each case must stand on its own peculiar facts.”
What is an inadequate sale price has not been definitively ascertained. One author suggested that any circumstances that has a depressing effect on the amount bid is a factor to be considered. (Quail, op. cit., § 17.05.) Another author has said that the conscience shocking inadequate price test "is a difficult one to apply, and courts cannot be relied upon to protect the mortgagor, especially in a period of economic crisis.” (3 Powell, Real Property fl 466, at 37-317 — 37-318.) One State has abandoned the test altogether and refuses to vacate sales on the ground of gross inadequacy of price. (Holt v Citizens Cent. Bank, 688 SW2d 414 [Sup Ct, Tenn 1984] [property worth $30,000 sold for $8,600 on $6,000 debt].)
*128 A leading case regarding adequacy of price is Polish Natl. Alliance v White Eagle Hall Co. (98 AD2d 400 [2d Dept 1983]). In Polish Natl., one issue addressed was the sufficiency of the bid price of 37% of market value. The Court said (98 AD2d, supra, at 408-409):
"Although foreclosure sales at prices below 10% of value have consistently been held unconscionably low in this State (see, e.g., Central Trust Co. Rochester v Alcon Developers, 93 Misc 2d 686; Alben Affiliates v Astoria Term., 34 Misc 2d 246; Chemical Bank & Trust Co. v Schumann Assoc., 150 Misc 221; Purdy v Wilkins, 95 Misc 706) while sales at 50% or more of value have been consistently upheld (see, e.g., Wesson v Chapman, 76 Hun 592; State Realty & Mtge. Co. v Villaume, 121 App Div 793; Southold Sav. Bank v Gilligan, 76 Mise 2d 30, supra), there is no definitive rule for sale prices that range between 10% and 50% of value. The judicial inability to create a categorical percentage figure between 10% and 50% below which all sale prices are unconscionably inadequate derives in part from the vast variety of circumstances under which judicial sales take place and the substantial diversity in types of real estate.
"Each case involving a judicial sale should be governed by its own peculiar facts (Ballentyne v Smith, 205 US 285, 290; see, also, Morse v Shangold, 135 NJ Eq 350) since public policy requires that the power to nullify judicial sales be exercised with caution. Creditors seeking to enforce liens should not easily be subjected to the expense and delay involved in the resale of their security nor should a successful bidder who acts in good faith be deprived of the bid simply because others have failed to bid (Ballentyne v Smith, supra, p 289). While the need for fairness to the debtor militates in favor of a rule fixing a high percentage of value as a minimally acceptable sale price, as we have noted, a high percentage figure might discourage bidding, impair the stability of judicial sales and frustrate the ability of creditors to enforce their liens (Wash-burn, The Judicial and Legislative Responses to Price Inadequacy in Mortgage Foreclosure Sales, 53 So Cal L Rev 843, 860). Property offered at a forced sale frequently produces a price 'substantially less’ than market value (Guardian Loan Co. v Early, 47 NY2d 515, 518, supra), a reality that has prompted commentators to criticize public sales as a poor method of obtaining true value (Durfee & Doddridge, Redemption from Foreclosure Sale — The Uniform. Mortgage Act, 23 Mich L Rev 825; 1 Glenn, Mortgages, § 93; Vaughan, Reform *129 of Mortgage Foreclosure Procedure — Possibilities Suggested by Honeyman v Jacobs, 88 U Pa L Rev 957). No replacement for this method has been found, however, and the fact remains that judicial sales are of little interest to the public, and those who bid seek to buy at bargain prices (Durfee & Doddridge, Redemption from Foreclosure Sale — The Uniform Mortgage Act, 23 Mich L Rev 825, 832). For a judicial sale to be overthrown, the degree of inadequacy must be 'very gross indeed’ (Vaughan, Reform of Mortgage Foreclosure Procedure —Possibilities Suggested by Honeyman v Jacobs, 88 U Pa L Rev 957, 964) and nullification should not occur unless the price is 'fundamentally unfair’ (Washburn, The Judicial and Legislative Response to Price Inadequacy in Mortgage Foreclosure Sales, 53 So Cal L Rev 843, 851).”
The Court immediately remarked that while the "sale at issue realized only 37% of alleged market value, sales involving similarly disproportionate percentages have been sustained in this and other jurisdictions” (98 AD2d, supra, at 409) and cited examples of 30%, 34% and 41%, while observing that one law review author suggested "one third as an appropriate guideline” (supra, at 409). A hearing was directed on a different issue involving possible collusion during bidding.
Subsequent to Polish Natl, (supra) the courts have sustained bid prices of 30% (Buttermark Plumbing & Heating Corp v Sagarese, 119 AD2d 540 [2d Dept 1986], lv denied 68 NY2d 607 [1986]), between 39% to 44% (Weil v Cerrato, 129 Misc 2d 1105), 45% (Federal Deposit Ins. Corp. v Forte, 144 AD2d 627 [1988]), somewhat in excess of 50% (Glenville & 110 Corp. v Tortora, 137 AD2d 654 [2d Dept 1988], lv denied 72 NY2d 806 [1988]), 57% (Long Is. Sav. Bank v Valiquette, 183 AD2d 877 [2d Dept 1992]) and 66% of fair market value. (Zisser v Noah Ind. Mar. & Ship Repair, 129 AD2d 795 [2d Dept 1987].)
Interestingly, in Wright v Caprarella (205 App Div 559 [2d Dept 1923]) the Court affirmed vacatur of a sale where the mortgagor’s attorney gave him the wrong time for the sale and the bid price at the sale held without his attendance was 38% of market value.
The design of the power justifying vacating sales for gross inadequacy of price is protection of the mortgagor. Some States have enacted antideficiency legislation to require advance bids, appraisals and upset prices. (Quail, op. cit., § 17.03; 4 American Law of Property § 16.202; 3 Powell, Real Property ¶ 466; Osborne, Mortgages §§ 329, 335 [2d ed 1970]; 55 Am Jur *130 2d, Mortgages, § 662; see, Farmers & Mechanics Sav. Bank v Eagle Bldg. Co., 151 Misc 249 [Sup Ct, Chautauqua County 1934]; Real Property Law § 128.) New York has restricted a mortgagee’s right to recover a deficiency judgment by enactment of legislation in 1938 (L 1938, ch 510) to require that on timely confirmation of the Referee’s sale (cf., Institutional Funding Corp. v Sobel, NYLJ, Feb. 18, 1991, at 26, col 3 [Sup Ct, Rockland County]), a fair and reasonable market value of the property be ascertained, not necessarily measured by the bid price, and the deficiency, if any, is measured by the difference between the mortgage indebtedness, plus costs and expenses relating to the foreclosure and real property taxes paid by the mortgagee, less the true market value of the property. (Marine Midland Bank v Harrigan Enters., 118 AD2d 1035 [3d Dept 1986]; 3A Warren’s Weed, New York Real Property, Mortgages, § 21.04; RPAPL 1371 [2]; see, Gelfert v National City Bank, 313 US 221 [1941]; Clarke v Schumann, 269 NY 60 [1935]; Wandschneider v Bekeny, 75 Misc 2d 32, 36-37, supra.) I have commented on the 1938 legislation and deficiency judgment provisions in Citibank v Covenant Ins. Co. (150 Misc 2d 129, 131 [Sup Ct, Rockland County 1991]): "These provisions were enacted (and can be traced back to the Revised Statutes, the Field Code and the Civil Practice Act) to curb perceived abuses with respect to double litigation on the bond and on the mortgage and purchases of the mortgaged property at distressed price below fair market value with a subsequent suit for the balance due on the bond. (Equitable Life Ins. Socy. v Stevens, 63 NY 341, 344-345 [1875]; Wandschneider v Bekeny, 75 Misc 2d 32, 36 [Sup Ct, Westchester County 1973].) In special circumstances, the court might exercise its discretion to permit a later suit on the bond where no deficiency could be obtained in the foreclosure action. (Equitable Life Ins. Socy. v Stevens, 63 NY 341, supra.) This might occur, for example, where an in personam judgment could not be obtained against a guarantor of the bond. (Irving Trust Co. v Seltzer, 265 App Div 696 [2d Dept 1943].)” (See also, Vaughan, Reform of Mortgage Foreclosure Procedure — Possibilities Suggested by Honeyman v Jacobs, 88 U Pa L Rev 957, 959-960 [1940]; Note, 18 NYU LQ Rev 299 [1940]; Durfee & Doddridge, Redemption from Foreclosure Sale — The Uniform Mortgage Act, 23 Mich L Rev 825, 827-831 [1925].)
The test for fair market value to ascertain a deficiency is equally applicable where the successful bidder is a stranger and not the mortgagee, except that the deficiency is further *131 reduced by the amount paid to the mortgagee by way of the bid. (Clarke v Schumann, 269 NY 60, supra; First Natl. Bank v Intermont, Inc., 53 AD2d 760 [3d Dept 1976]; Metropolitan Museum of Art v Clement, 265 App Div 1056 [2d Dept 1943], affd 293 NY 777 [1944]; Primary Realty Corp. v Librett, 178 Misc 40, 42-43 [Sup Ct, Westchester County 1941, Nolan, J.]; 79 NY Jur 2d, Mortgages, §§ 763, 774; but cf., Washburn, The Judicial & Legislative Response To Price Inadequacy In Mortgage Foreclosure Sales, 53 So Cal L Rev 843, 882, 911 [1980].)
At bar, the bid price constitutes 21V¿% of the unrefuted market value. It is unknown whether any deficiency against the mortgagors would be collectible. Mr. Buchman, as previously noted, is the father of one of the mortgagors and apparently intends to permit the mortgagors to remain on the premises if he is continued to be deemed the successful bidder. Under the circumstances reflected in the record of a market value of $200,000 the future deficiency judgment herein, if any, would amount to only $8,993.29 plus costs and expenses of the foreclosure and any real property taxes paid by plaintiff. The mortgagee, however, would have received only $55,000 less costs and expenses against its judgment of $208,993.29 and would see approximately $145,000 disappear by reason of its failure to bid on the property up to the judgment amount. This fact must also be taken into account when the court weighs the prudence of exercising its equitable powers. (Wandschneider v Bekeny, 75 Misc 2d 32, supra.)
Research has failed to elicit much discussion of inadequacy of price in the cases in the range involved herein, below 30% but above 10% (Annotation, Execution Sale — Validity—Sale Price, 5 ALR4th 794 [1981]; but cf., Holt v Citizens Cent. Bank, 688 SW2d 414, supra [28.6% of value seemingly not shockingly inadequate]; Ballentyne v Smith, 205 US 285, supra [14% is shockingly low].) In these recessionary economic times with a depressed real estate market in Rockland County, the court cannot hold as a matter of law that a bid of 21Vi% ($55,000 -T- $200,000) is grossly inadequate, unconscionably low or so disproportionate as to shock the conscience of the court. However, the court strongly believes that the combination of an obvious price inadequacy combined with plaintiff’s initial mistake is sufficient for application of equitable principles to this sale. (Control Trust Co. v Alcon Developers, 93 Misc 2d 686 [Sup Ct, Wayne County 1978].)
The plaintiff’s mistake was an honest one through erroneous instructions by its agent to its representative, was immedi *132 ately corrected and coupled with what the court considers as a seriously depressed bid price, should not deprive plaintiff of the right to reopen the sale for new bidding. Indeed, the Referee could well have refused Mr. Buchman time to obtain certified funds at the sale (Weil v Cerrato, 129 Misc 2d 1105, supra; but cf, Glenville & 110 Corp. v Tortora, 137 AD2d 654, supra; Alben Affiliates v Astoria Term., 34 Misc 2d 246, supra). The exercise of discretion by the Referee to allow Mr. Buchman to make good on his bid should not simultaneously deprive plaintiff of the right to vacate the sale. Equity must exist for all parties.
Accordingly, the court concludes that the low bid of 27 Vi % of market value coupled with the plaintiff’s initial mistake in ceasing bidding warrants invocation of the court’s equitable powers to set aside the sale to Mr. Buchman. A new sale shall be conducted on published notice and personal notice to the mortgagors and Mr. Buchman, by certified or registered mail, at least 10 days before the sale, return receipt requested, which sale is to be held in the courthouse rotunda at 10:00 a.m. on a day to be set forth in the notice. Plaintiff shall bear the cost of the additional expenses incurred on the new sale, including the fee of the Referee, who is to be paid again for her renewed efforts, and said expenses shall not form a part of a deficiency judgment, if any. The Referee shall return the down payment to Mr. Buchman forthwith. (Alben Affiliates v Astoria Term., 34 Misc 2d 246, 249, supra; 79 NY Jur 2d, Mortgages, § 711; 2A Warren’s Weed, New York Real Property, Judicial Sales, § 6.03; CPLR 5237.)
The court notes that it is improper and a violation of the Uniform Rules for Trial Courts (22 NYCRR) § 208.11 (b) (1) for affidavits to contain legal citations and arguments. (Armendariz v Tiramisu Rest., 170 AD2d 334 [1st Dept 1991].)
[Portions of opinion omitted for purposes of publication.]