OPINION OF THE COURT
Jeffrey Arlen Spinner, J.
The defendant Wachovia Bank N.A. has applied to this court for an order vacating and setting aside the February 8, 2007 foreclosure sale of premises commonly known as 80 Berry Street, Lindenhurst, Town of Babylon, New York. Both the plaintiff and the third-party purchaser New Life Properties vigorously oppose the application.
Procedurally, the plaintiff brought this action to foreclose a defaulted first mortgage in the original principal amount of $185,000 given by the defendant Charles Diaz, Jr. The defendant Wachovia was joined as a necessary party due to its status as the owner and holder of a credit line second mortgage which encumbered the premises in the amount of $85,000. However, Wachovia defaulted in appearance in this proceeding and therefore did not make any application to the court pursuant to RPAPL 1351 or 1354 (parenthetically, a review of the court’s official records shows that Wachovia, by Gullace & Weld LLP, commenced its own foreclosure action under Index No. 2006-23202, affecting the same premises). A judgment of foreclosure and sale was granted on November 17, 2006 (Bivona, J.) which, fixed the indebtedness due to plaintiff (exclusive of counsel fees and costs) at $188,698.14 as of June 1, 2006 and which made no provision for computation or payment upon Wachovia’s lien, presumably due to the failure of that defendant to assert its rights under RPAPL 1354. That judgment also contained a decretal paragraph which appointed Michael E. McCarthy, Esq. as Referee to sell the premises.
A public auction sale of the premises was duly and properly scheduled for February 8, 2007 at the Babylon Town Hall in Lindenhurst, New York. The Referee publicly announced the terms of sale, reading from a document prepared by plaintiffs counsel which stated, in paragraph 1 thereof, as follows: “Ten percent (10%) of the purchase money of said premises will be required to be paid in cash or certified check to the said Referee at the time and place of sale, for which the Referee’s receipt will be given.” Thereafter, the Referee commenced the sale and entertained a series of bids, culminating in the acceptance of the high bid of $311,400 by Wachovia. Upon the close of the bidding, the Referee requested the 10% tender whereupon counsel *417 for Wachovia produced, an uncertified “starter” check, drawn upon Wachovia Bank N.A. with “Gullace & Weld LLP” stamped thereon. Although counsel characterized it as an escrow or attorney trust account check, the instrument bore no such indication. The Referee indicated that the tender was defective whereupon counsel for Wachovia requested an adjournment of the sale in order to correct said defect. The Referee telephoned the appointing justice to obtain guidance, who directed the Referee to deny the adjournment request and further to reauction the premises. The Referee complied with the court’s directive and, upon the resale, the premises were struck down to New Life for $255,000, who tendered certified funds for the required earnest money, as set forth in the terms of sale.
This application followed, commenced by way of an order to show cause granted on February 9, 2007 (Bivona, J.) absent any stay of proceedings. The Appellate Division, Second Department (Schmidt, J.), by order dated March 5, 2007, granted a stay of proceedings which was to remain in effect pending this court’s disposition of the instant application. A recusal order was thereafter generated by the prior assigned justice and the matter was reassigned to this Part. Additional submissions were received, a lengthy conference with counsel and the court ensued on April 24, 2007 culminating in May 16, 2007 being the final submission date. A cross application was submitted by the Referee for an award of additional compensation, occasioned by these post-sale proceedings.
The primary thrust of Wachovia’s argument is that the Referee’s rejection of its tender was wrongful, improper, arbitrary and unreasonable. Counsel urges the court to vacate and set aside the sale to New Life, asserting that if the sale were permitted to stand, Wachovia would suffer a loss of some $50,000, as opposed to Wachovia’s purchase for $311,400 wherein it allegedly would be made whole. In spite of the fact that the starter check tendered by counsel clearly contains no reference whatsoever to it being drawn upon an attorney trust account, special account, escrow account or some other language, counsel simply asserts otherwise. In support thereof, counsel annexes a copy of the account signature card dated April 13, 2006 which describes it as a lawyer’s trust account, which was first proffered to the Appellate Division in its application for a stay. Even so, the check, as tendered to the Referee at the time of auction, bears no such designation. However, the inescapable fact remains that the terms of sale did not include acceptance of *418 escrow account checks and so it could well be argued that the tender was palpably improper.
In addition, Wachovia’s counsel vigorously avers that various provisions of the terms of sale promulgated by plaintiffs counsel are, by his description, “illegal,” “overreaching,” “dubious,” “overbroad,” “oppressive” and, further, that they contain a “bait and switch” provision. Moreover, counsel characterizes the Referee’s actions as both unreasonable and confiscatory insofar as they relate to Wachovia’s interest in the premises.
In response thereto, counsel for both the plaintiff and for the third-party purchaser assert that this entire sorry situation was brought about solely as a result of Wachovia’s failure to comply with the terms of sale and its failure to act in a manner consistent with the protection of its interests. Indeed, counsel for New Life, in a supplemental affirmation in opposition dated April 23, 2007, appends copies of a notice of sale and terms of sale prepared by Gullace & Weld LLP, dated January 7, 2004, under Suffolk County index No. 2002-04842. The first paragraph of the terms of sale states verbatim as follows:
“Ten percent of the amount of the bid accepted will be required to be paid in cash or certified check to the Referee at the time and place of sale for which the referee’s receipt will be given. The Referee will give full credit for any deposit in excess of 10 percent.”
As can plainly be seen from the foregoing, the language utilized by Gullace & Weld LLP is virtually identical to the language that they challenge so strongly in this proceeding. It is difficult for this court to understand why Gullace & Weld LLP would use such language in its own terms of sale but then viciously attack the identical language in terms of sale used by other counsel under the same conditions. Regrettably, Wachovia’s counsel continues by again unfairly sniping at the Referee, characterizing him as being unreasonable and imprudent, even going so far as to assert that the Referee must use his independent judgment, implying that the Referee should not have deferred to the appointing justice. Such donnish averments are both specious and hubristic and have no place in these proceedings.
That being said, the court is required to examine the law applicable to applications to vacate foreclosure sales. In order to set aside a foreclosure sale, it must be demonstrated that the sale was tainted by overreaching, fraud, collusion or mistake *419 (Guardian Loan Co. v Early, 47 NY2d 515 [1979]; Bank of NY. v Sheik, 279 AD2d 440 [2d Dept 2001]) or that an unconscionably low sale price was obtained (Fisher v Hersey, 78 NY 387 [1879]; Crossland Mtge. Corp. v Frankel, 192 AD2d 571 [2d Dept 1993]; Bankers Fed. Sav. & Loan Assn. v House, 182 AD2d 602 [2d Dept 1992]). It has been held that the Referee does have discretion in determining what form of earnest money he or she will accept (Charles F. Curry Co. v Yodah Group, 162 Misc 2d 426 [Sup Ct, Monroe County 1994]). Wachovia has not demonstrated that the sale was tainted by any of the foregoing problems nor has it shown that the amount bid by New Life was so inadequate as to shock the conscience. Therefore, it was well within the discretion of the Referee to decline the proffer of an uncertified starter check by Wachovia, notwithstanding the representations of it being a trust check and especially in light of the fact that the Referee did so only after requesting advice from the appointing justice.
The cases cited by the defendant Wachovia, viz., United States Trust Co. v Simon (228 AD2d 580 [2d Dept 1996]) and Glenville & 110 Corp. v Tortora (137 AD2d 654 [2d Dept 1988]) which permitted a Referee to exercise discretion to adjourn a sale and accept uncertified funds, are clearly distinguishable from the present matter in that here the Referee exercised his discretion by seeking a directive of the court as to how to proceed. The Referee was therefore bound by the court’s directive and acted in compliance therewith. It strains credulity to claim that the Referee should exercise independent action after receiving direction from the court.
Indeed the court finds, from all of the evidence presented, that the Referee herein, Michael E. McCarthy, Esq., acted in a manner that was unquestionably reasonable and prudent, even going above and beyond what might be expected of the Referee under the circumstances. The Referee, as an impartial third party acts, in effect, as an arm of the court. In this instance, the record reflects that the Referee, upon encountering the present situation, chose to communicate with the court, who directed him to deny the adjournment request and to resell the premises. Surely, the Referee should not now be taken to task for taking the rational step of contacting the court. While it is true that the Referee must act in a reasonable and prudent manner, this requirement does not make the Referee an insurer for the benefit of any party, especially a party who has defaulted in the action, thereby placing itself in a precarious situation. In short, *420 the application of Wachovia Bank N.A. is both legally and factually inefficacious and cannot be sustained.
This court is constrained to find that the Referee acted in a reasonable, prudent, proper and professional manner and further that the resale of the property to New Life was fair, reasonable and not unconscionable under the circumstances and, hence, that resale should be ratified and confirmed.
As to the Referee’s request for additional compensation, the same is properly sought pursuant to the provisions of CPLR 8303. According to the Referee’s affirmation dated May 2, 2007, he has expended 12.5 hours herein with respect to his response to this application together with disbursements totalling $2.52 and has not been paid the statutory $500 fee as provided for in the judgment of foreclosure and sale. The Referee states that his usual hourly billing rate is $300. The court believes that the Referee is entitled to total compensation herein of $4,252.52, inclusive of the statutory fee. The statutory fee of $500 shall be borne by the plaintiff while Wachovia Bank N.A. shall be liable to the Referee for the sum of $3,752.52, all of which shall be paid to the Referee within 30 days after the entry of this order.
It is therefore ordered that the application of the defendant Wachovia Bank N.A. shall be and the same is hereby denied in its entirety; and it is further ordered that the February 8, 2007 resale auction of the premises to New Life Properties for the sum of $255,000 shall be and the same is hereby ratified and confirmed; and it is further ordered that the Referee shall be and is hereby permitted to proceed with the consummation of the sale of the premises to New Life Properties; and it is further ordered that Referee Michael E. McCarthy, Esq. shall recover of the plaintiff the statutory Referee’s fee in the amount of $500, which shall be paid within 30 days of the entry of this order; and it is further ordered that the Referee Michael E. McCarthy, Esq. shall recover of the defendant Wachovia Bank N.A. additional compensation in the amount of $3,752.52, which shall be paid within 30 days of the entry of this order.