OPINION OF THE COURT
Lawrence H. Ecker, J.
In this residential foreclosure action, defendant seeks to set aside the referee’s sale, and prevent the conveyance of the mortgaged premises to the intervenor, who was the nonparty purchaser at the referee’s sale. There is no dispute among the parties that the sale was properly conducted by the referee on March 9, 2017, or that the upset price was not reasonably related to the fair value of the subject property. Rather, defendant argues that he was mistakenly led to believe that based upon a conversation he, and his attorney, each separately had with a representative of plaintiff on the evening of March 8, 2017, it was reasonable for him to assume that the sale would be postponed.
According to defendant, since January 2017, he was working with Jack Jenkins, the “Single Point of Contact” representative of plaintiff’s loan servicer, in order to complete the workout of the loan modification agreement, leading to the reinstatement of the mortgage held by plaintiff. Holding up the completion of this process was the clearance of liens filed against the premises by third parties. By March 8, 2017, the liens had been satisfied but in a conversation with Jenkins, defendant was advised he needed to forward proof of filing with the County Clerk. Defendant has spent more than $116,000 in his efforts to save the premises from foreclosure during the pendency of this action.
Defendant states that he forwarded the proof as to the lien clearance to Jenkins, and that at approximately 6:05 p.m. on March 8th, Jenkins called him to inform him that the sale of the house had been suspended, that his application was complete, and that he would be contacting defendant with details (Woodward aff ¶ 9). Jenkins also called his attorney, Peter Spino, Jr., Esq., and told him that the sale had been suspended (Woodward aff ¶ 9). Defendant further avers that on or about the morning of March 9, 2017, he received a call from Jenkins who advised he had attempted to call defendant’s attorney, but wanted to assure him that he had checked and the sale was suspended and that all of defendant’s paperwork was in order (Woodward aff ¶ 10). By affirmation, Mr. Spino, defendant’s attorney, repeats the conversation that defendant had with Jenkins, and further states “Mr. Jenkins also called *1079 me [the evening of March 8th] said [sic] that the sale had been suspended.” (Spino affirmation ¶ 10.)
Apparently no one alerted plaintiff’s attorneys or the referee that the sale had been suspended. Lily Langer, the intervenor, appeared at the referee’s sale, and in the presence of a representative of plaintiff’s loan service provider, was the successful bidder in the amount of $498,205, for which she provided the referee with a deposit payment of $55,000. To date the referee has not been paid the balance of the bid price, nor has he delivered his deed to Langer.
Neither plaintiff nor Langer dispute the facts as presented by defendant. They argue that defendant should have sought court relief sooner, as he had in the past, and that his attorney should have reached out to plaintiff’s attorneys rather than relying on plaintiff’s representative. Plaintiff acknowledges that defendant has taken all steps required to complete the workout and the reinstatement of the mortgage.
In the exercise of its equitable powers, a court may set aside a foreclosure sale where there is evidence of fraud, collusion, mistake, or misconduct. Absent such conduct, the mere inadequacy of price is an insufficient reason to set aside a sale unless the price is so inadequate as to shock the court’s conscience. (Guardian Loan Co. v Early, 47 NY2d 515 [1979].) Here, there are no allegations of inadequacy of the bid amount, or fraud, or collusion, or misconduct. That leaves for the court’s analysis whether there was a mistake, and if so, whether the mistake was unilateral, or otherwise.
A unilateral mistake on the part of a mortgagor does not provide him with recourse to avoid the consequences of the referee’s sale. In Federal Natl. Mtge. Assn. v New York Fin. & Mtge. Co. (222 AD2d 647 [2d Dept 1995]), the Court held that the fact the appellant’s counsel did not go to the correct location where the foreclosure sale was taking place was a unilateral mistake affording no relief to defendant. In U.S. Bank N.A. v Testa (140 AD3d 855 [2d Dept 2016]), the appellant was unable to set aside the sale where he failed to follow its bidding instructions. In Dime Sav. Bank of N.Y. v Zapala (255 AD2d 547 [2d Dept 1998]), the appellant was unsuccessful in upsetting the sale due to what was claimed to be the miscom-munication he had with the lender who was to have furnished the funds necessary to pay off the foreclosing lender.
In each of these decisions, the mistake was made solely by the party allegedly aggrieved by the conduct of the sale. Here, *1080 however, the mistake was not unilateral. Plaintiffs representative, Jenkins, had been dealing with defendant over the course of a two-month period and assured both defendant and his attorney on the eve of the scheduled sale that it would be “suspended,” because, as plaintiff acknowledged, defendant had completed all of the steps required to entitle him to the reinstatement of the mortgage.
The court finds that as a matter of equity, in the exercise of its discretion, and in good conscience, defendant is entitled to be relieved of the sale of the premises to the intervenor. At the same time, the nonparty intervenor is entitled to be restored to the status ante litem, such that she is entitled to the refund of her down payment, with interest at the rate of three percent, from March 9, 2017 to the date of repayment.
The court has considered the additional contentions of the parties not specifically addressed herein. To the extent any relief requested by either party was not addressed by the court, it is hereby denied. Accordingly, it is hereby ordered that plaintiff and defendant shall forthwith execute the documentation reasonably required for the reinstatement of the mortgage loan; and it is further ordered that upon presentment by the intervenor of a statement setting forth the calculation of interest due from plaintiff on the amount of $55,000, running from March 9, 2017 to the date of remittance, that plaintiff pay all said amounts to the intervenor; and it is further ordered that the referee, upon being notified in writing by plaintiff and the intervenor that the conditions as herein imposed have been satisfied, shall refund to the intervenor the amount of $55,000 which has been on deposit in the referee’s attorney trust account;* and it is further ordered that upon all of the above conditions having been satisfied, the parties shall sign, and plaintiff shall file, a stipulation of discontinuance of this action, with prejudice.

 In the event the referee deposited the down payment into an interest bearing account, then the interest so earned shall be paid to the intervenor, and the amount thereof shall be credited against the interest to be paid by plaintiff pursuant to this order.